Nash, J.
 

 The bill of exceptions contains several objections to the charge of the presiding Judge. We will consider them in the order, in which they are presented.
 

 The first is, that his Honor admitted improper testimony. The testimony objected to by the prisoner, is that portion relative to the treatment of his wife. After much testimony had been given in, the case states, “ that the State then introduced several witnesses to prove a long course of ill-treatment of his wife by the prisoner, for the purpose of showing that he had malice against her, and wished to get rid of her.” Was this a legitim ate purpose, and the means used lawful ? No person was present when the alleged homicide was committed. There could be no direct and positive proof of the fact of the person of the perpetrator, and the jury were left to draw their conclusions from such facts, as could inform their understanding on the subject. The first en-
 
 *384
 
 quiiy would be, who could be the • perpetrator ? and the mind would naturally turn upon the person, who, either from interest or malice, might desire her death. Interest, in this case, could not exist, and malice alone could lead to the deed. Ordinarily, the eye of suspicion cannot turn upon the husband, as the murderer of his wife, and when charged upon him, in the absence of positive proof, strong and convincing evidence — evidence that leaves no doubt on the mind, that he had towards her that
 
 mala mens,
 
 which alone could lead him to perpetrate the crime — is always material, flow else could this be done than by showing his acts towards her, the manner in which he treated her, and the declarations of his malignity ? What stronger proof of malice can be imagined than a husband sending his own brother into his wife’s bedroom, in order to found a charge of adultery, whereby he might get rid of her by a divorce ? What stronger proof of malice, than stripping her naked, and, in that condition, turning her out of his doors ? On behalf of the prisoner, it is, however, said, the State was permitted to go too far back for its facts, and by that means the general character of the prisoner was brought before the jury to speak against him.
 
 Not so.
 
 in the domestic relation, the malice of one of the parties is rarely to be proved, but from a series of acts ; and the longer they have existed and the greater the number of them, the more powerful are they to show the state of his feelings. A single expression and 'a single act of violence are most frequently the result of temporary passion, as evanescent as the cause producing them. But a long-continued course of brutal conduct shows a settled state of feeling, inimical to the object. We are of opinion, then, that his Honor did not err in receiving the testimony objected to; because malice may be proved as well by previous acts as by previous threats, and often much more satisfactorily. Ros-eoe’s Crirn. Ev. 96, 740,
 
 2
 
 Phil, on Ev. 498.
 

 
 *385
 
 It is, however, said in the defence upon this part of the case, that, after the prisoner had turned his wife out of doors, they had become reconciled, and he had taken her back; and that, therefore, all the antecedent ill-blood om his part could not amount to malice in law. His Honor’s instruction to the jury on this point was full. They were told, “ that the circumstance of malice was relied on by the State to aid in pointing out the prisoner as the murderer; they must enquire whether it ever existed : That a reconciliation was alleged on the part of the prisoner; they must enquire whether it was made, anti whether it was real or pretended, and, if they believed it to be real, then the circumstance of malice was not to be taken into account.” This was going as far as the Judge was authorised to go. The rest belonged to the jury.
 

 Second: As to the testimony rejected by the Court. The prisoner offered to prove by the declarations of the deceased, that she had been guilty of adultery; and also to prove by an exposition of his foot, that his account of her ploughing was correct, as showing, that the tracks in the row of the ploughed corn could not have been made by him. The first branch of the evidence above mentioned was properly rejected, because it would have gone strongly to prove the malice charged against him, and, therefore, its rejection could do him no possible harm, and because, it was irrelevant to the issue before the jury ; and it is never error to reject evidence of such a character.
 

 The Court committed no error in not suffering the defendant’s Counsel to exhibit to the jury the foot of the prisoner. It is the duty of the respective parties to a cause, as, well ci’iminal as civil, to adduce their testimony in apt time and in apt order, and, if not so done, it is a matter of discretion with the Judge, who tries the cause, whether he-will suffer it afterwards to go to the jury; and all the testimony must be given to the jury before the argument commences. After that,'the parties have no
 
 right
 
 to introduce
 
 *386
 
 additional testimony;
 
 State
 
 v
 
 Hopkins,
 
 5 Ire. 406,
 
 Williams
 
 v
 
 Averitt, 3
 
 Haw. 308,
 
 Simpson
 
 v
 
 Blount,
 
 3 Dev. 34, although it is often done, and will always be allowed in a case of life and death, when the Court sees that its omission was clearly an oversight, unless at the same time it is seen, that it is irrelevant and uncalled for. If, however, the Court does refuse, to receive it, at such time, it is no error of law — it being a mere exercise of a discretionary power. Here the testimony' had been closed and an argument submitted to the jury. But another reason why its rejection was not erroneous, is found in the fact, that the State had withdrawn that portion of the evidence, to which it was' intended as a reply. It was not relied on in the argument in behalf of the State, and the opposing testimony was rendered unnecessary or rather irrelative ; neither did his Honor in his charge, advert to it. In ruling it out, no error was committed.
 

 The next exception in point of order is, that the Judge told the jury the prisoner was guilty of murder, if guilty at all. His Honor commenced his charge by stating to the jury, “ that it was unnecessary to explain to them the principles oí the law of homicide, ándito point out the distinction between its different grades, because the prisoner was not guilty at all, or he was guilty of murder.” This
 
 exception
 
 cannot be entertained: first, because it never is error to
 
 omit
 
 to charge upon a particular principle. If a party wishes the Judge to do so, it is his duty to require it.
 
 McNeil
 
 v
 
 Massey,
 
 3 Haw. 91.
 
 Simpson
 
 v
 
 Blount,
 
 3 Dev. 34.
 
 State
 
 v
 
 Scott,
 
 2 Dev. &. Bat. 35. Secondly, if the instruction had been asked for, it would not have been the duty of the Court to have given it. A Judge is never bound to instruct a jury upon an abstract proposition. His duty is to lay down to them the law, as applicable to the evidence before them.
 
 State
 
 v
 
 Martin,
 
 3 Ired. 101. Here, there was not 'the slightest evidence to mitigate the offence, if. committed by the prisoner, from murder to manslaughter. And,
 
 *387
 
 thirdly, it never can be error in the J udge to assume that as true, which the prisoner, in his defence, has treated as true.
 
 State
 
 v Miller, 1 Dev. & Bat. 500. On looking through the case sent here, we do not find it anywhere suggested, that the prisoner was guilty of manslaughter — the whole argument, on his part, is bottomed upon the proposition, that the prisoner did.not commit the homicide. In this part of the charge there is no error.
 

 The next exception is, that the Judge, speaking of the doctrine of one credible witness, told the jury that it was their duty to believe him. The first remark to be made is, that the language used by the Judge was upon a hypothetical case not called for, and used only in pointing out to the jury the difference between positive and presumptive evidence. But, if there had been such evidence of the killing, still, put as it was by his Honor, there would have been no error. He winds up what he has to say upon that point, and in strict connection with it, “ yet it was possible the witness might be mistaken or perjured.”
 

 The charge of the Court in
 
 Noland
 
 v
 
 McCracken,
 
 1 Dev. & Bat. 594, was essentially different from the one we are considering. There, the jury were told, “that when a witness was heard by a jury, who was neither impeached, nor contradicted — whose story was credible, and in whose manner there was nothing to shake their confidence — they were bound to believe him.” In the case before us, the Judge clearly did not intend to lay it down as a rule of
 
 law,
 
 that, in such case, they must believe the witness ; for, he immediately goes on to guard them from such a conclusion, by stating, that the witness might be mistaken — a caution omitted in
 
 Noland’s case.
 
 The remark of his Honor was genera], and properly qualified, and could do the prisoner no injury.
 

 The two last exceptions run into each other, and will be considered together. The first is, that his Honor instructed the jury, they must take all the circumstances together,
 
 *388
 
 and not separately. His language is,
 
 “all
 
 the eircumstait-ces for and against the prisoner-, which were proved beyond a reasonable doubt, must be taken all together, and not separately/’’ Now, in order rightly to understand the precise meaning of the Judge, we must advert to the argument of the prisoner’s counsel, addressed to the jury on that point.
 
 He
 
 contended, “ that the circumstances, testified to by the witnesses, ought all to be considered separately by the jury) and then
 
 classed, as either conclusive, or inconclusive,
 
 according to the force and effect
 
 they
 
 might deem them entitled to.” The rule, thus laid down by the counsel, was well calculated for a philosopher in his closet, but little suited to á jury in coming to any conclusion whatever. The object of all evidence is, to satisfy the mind of the enquirer ; and that satisfaction is to be derived from the effect of the whole. One particular fact, isolated from the others, viewed by itself — might appear entirely unimportant: connected with others, it may become very important. Every one acquainted with circumstantial testimony, knows this to be so. In fact, its force and power to convince is this union of separate and distinct circumstances into one continuous chain, which, being at last connected with the prisoner, produces that state of mind in the jury, which enables them to pronounce him guilty. It was this principle which the Judge had in view — he did not intend, that the jury should not look at, or consider, the several circumstances given in evidence; for, they could come to no just conclusion without doing it. All that he meant, was, that they must draw their conclusions from the whole of the circumstances, and pronounce their verdict, as that conclusion should direct. If, m the concluding remarks of his Honor there is error, it is one in favor of the prisoner, and which could certainly do him no injury. The widest range was given to them. They had just previously been instructed) “if there is any reasonable hypotheses, consistent with his innocence, .(believing the facts to be true beyond a reasonable
 
 *389
 
 doubt,) then he ought to be acquitted”; and, in conclusion^ he tells them, in substance, “ if you believe the facts to be as testified to; and can
 
 suppose any case,
 
 in which they do not apply to the prisoner, it is your duty to make the supposition, and acquit him.” Taking the whole of what the Judge said on this point, we repeat, the prisoner has nothing to complain of, and there is no error.
 
 State
 
 v
 
 Swink, 2 Dev.
 
 & Bat.
 
 9.
 

 In the argument of the case, it was contended by the prisoner’s Counsel, that, from the discrepancy jn the testimony of the medical witnesses, the jury could not, and ought not, to say, that the deceased came to her death by violence at all. His Honor instructed the jury, that that was the 'first point to be ascertained by them ; and then left it to them to say, how the fact was under the evidence. This was all he could do. It was a matter of fact, exclusively for their consideration.
 

 We have carefully, and with much solicitude, examined the evidence in the case, and the exceptions brought before us, fully sensible of the importance of the enquiry and pur own responsibility, and are constrained lo say, that in his Honor’s charge, and in the reception and rejection of evidence, there is no efror-^-that the law has been fairly administered, and that the prisoner has no just cause of complaint.
 

 We have examined the record, and find no cause there, why the judgment should be arrested.
 

 This opinion must be certified to the Superior Court of Cabarrus County, that it may proceed to judgment according to law.
 

 Per Curiam. Ordered accordingly.