STATE v. FOSTER.

(Filed April 22, 1902.)

1. EVIDENCE—*Threats—Homicide—Malice—Premeditation.*

Where a person is indicted for murder, it is competent to show that the defendant about a month before the murder, having some trouble with the deceased, threatened to "fix" him.

2. EVIDENCE—*Sufficiency—Murder in First Degree.*

The evidence in this case of premeditation and deliberation is sufficient to authorize the jury to find a verdict of murder in the first degree.

3. HOMICIDE—*Instructions—Premeditation—Deliberation.*

On a prosecution for murder, an instruction as to murder in the first degree is incomplete unless it explains the meaning of "premeditation" and "deliberation."

4. ADMISSIONS—*Homicide—Attorney and Client.*

Admissions of counsel made on trial as to any fact or law will not be taken as true where it plainly appears that they are not true.

5. HOMICIDE—*Instructions—Admissions—Counsel—Murder in Second Degree.*

Where a person is convicted of murder in the first degree, it is error if the court failed to instruct as to murder in the second degree, even though counsel admitted defendant to be guilty of murder in the second degree.

6. HOMICIDE—*Instructions.*

On a prosecution for murder it is the duty of the trial judge to instruct as to murder in the second degree, even though no request is made therefor.

7. EVIDENCE—*Flight—Homicide—Premeditation.*

On a prosecution for murder the flight of the prisoner does not tend to prove premeditation or deliberation.

8. EVIDENCE—*Character in Evidence.*

Where the defendant in a prosecution for murder testifies for himself, but introduces no evidence as to his character, it is incompetent to show that he had the reputation of being "a little fussy."

STATE v. FOSTER.

INDICTMENT against Benjamin Foster, heard by Judge
E. W. Timberlake and a jury, at October Term, 1901, of the
Superior Court of FRANKLIN County.

The deceased and the prisoner were employees of one Cop-
pedge, and the homicide occurred at the barn of said Cop-
pedge on Saturday evening just before night. The deceased,
Forney Johnson, was unloading guano, his father, a nephew,
and some other persons being present, though it does not ap-
pear whether they were assisting in unloading the guano or
not. The prisoner passed near the barn, when the nephew
called to the prisoner to come and help unload the guano,
which the prisoner refused to do, and the evidence shows that
he cursed the crowd at the barn and the deceased cursed him,
and the prisoner threw a rock which struck the deceased on
the head, inflicting a wound from which he died next morn-
ing. There was evidence that the prisoner and deceased had
some trouble about a bridle about a month before the homi-
cide, when the prisoner said "he would fix" the deceased;
that the prisoner and deceased had not been on friendly
terms since that time, and the prisoner had complained that
evening to Coppedge that the deceased had cursed him; that
the prisoner had picked up the rock he threw at deceased be-
tween the house and the barn of Coppedge, and that the pris-
oner's way home, a distance of some two hundred yards, was
by the barn where the difficulty took place. It was also in
evidence that the prisoner ran after throwing the rock, cursed
the deceased, saying, if he had not killed the deceased, who
followed him a short distance, that he would kill him if he
followed him; that next morning the prisoner went back to
Coppedge's, but upon hearing a noise at the deceased's house,
which led him to think Johnson was dead, he went into the
woods, where he remained for about two weeks, and until
he received information from Coppedge that if he would
come in he would see that he was not mobbed, when he came

in and surrendered himself to the Sheriff of the county. The prisoner went upon the witness-stand and gave his version of the difficulty; denied saying "he would fix" the deceased at the time of the trouble about the bridle; denied that he intended to kill the deceased; said he picked up the rock because he was afraid the deceased would attack him, as he had before that time threatened him; said the deceased came at him with a drawn knife, and he threw the rock in self-defense. He also introduced other witnesses for the purpose of corroborating him as to threats of the deceased. Among them was Coppedge, who, among other things, testified that the prisoner "was a little fussy," and that his character for truth was not the best. From a verdict of murder in the first degree and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*F. S. Spruill,* for the defendant.

CLARK, J., after stating the case as above. The appeal shows only four assignments of error: First, that the Court refused to charge the jury that, upon the whole evidence, they could not convict the prisoner of murder in the first degree; second, that there was error in admitting the evidence of W. J. Johnson as to the difficulty about the bridle, which occurred a month before the homicide; third, for that the Court charged that "on the other hand, if the evidence satisfies you beyond a reasonable doubt that the defendant did wilfully, deliberately and with premeditation kill the deceased, that is, at the time he threw the rock, however short a time beforehand such purpose was formed, he, the said Benjamin Foster, intentionally, deliberately and with premeditation, made up his mind to take the life of Forney Johnson, however much you may incline through sympathy to find a different verdict, you must return a verdict of mur-

der in the first degree"; fourth, that the Judge did not charge the jury as to the law of murder in the second degree, but that the whole of the charge was as to murder in the first degree. The prisoner complains of this, and says that it was prejudicial to him and his defense. The learned Judge who tried the case seems to recognize the force of this objection, and, in a footnote to the case on appeal, "in justice to himself," he gives as a reason for this omission that the prisoner's counsel had admitted in his argument to the jury that the prisoner was guilty of murder in the second degree. We can very well see how this admission may have led the Court into this omission to charge. The State contends that it was no error, after the admission of prisoner's counsel; and that if it was error not to charge the jury on the law of murder in the second degree, it did not and could not have prejudiced the prisoner's defense, as he was convicted of murder in the first degree.

We see no error in admitting the evidence of W. I. Johnson as to the trouble between the prisoner and the deceased about the bridle. At the time this evidence was introduced, there had been no admission by the prisoner's counsel that he was guilty of murder in the second degree, and, as murder in the second degree is the same as murder at common law (*State v. Rhyne,* 124 N. C., 847), it was competent as tending to show express malice. And it seems that it might have been considered as some evidence, though not sufficient of itself, tending to show premeditation and deliberation. *State v. Thomas,* 118 N. C., 1113.

We can not sustain the prisoner's first exception "that the jury could not find the prisoner guilty of murder in the first degree," as we take this prayer in substance to be the same as asking the Court to instruct the jury that there was no evidence, or no sufficient evidence, to authorize them to find a verdict of murder in the first degree. This is always a deli-

cate question for a Judge, and especially so in the trial of a capital felony, where there is *any* evidence that tends to prove the guilt. But there are cases where the Judge should assert his prerogative and so declare or charge. *State v. Rhyne, supra; State v. Miller,* 112 N. C., 886; *State v. Thomas, supra; State v. Wilcox,* 118 N. C., 1131; *State v. Gragg,* 122 N. C., 1082.

But in this case we have the evidence of W. I. Johnson as to the difficulty about the bridle, in which the witness testified that the prisoner said, "I'll fix you." The fact testified to by himself that he had complained to Coppedge, his employer, that evening that the deceased had cursed him and he did not like it, and the fact that he picked up a rock with which the fatal blow was given, before he got to the barn where the difficulty occurred, was sufficient, in our opinion, to carry the issue to the jury—while it does not appear to us to have been very strong or conclusive evidence to show that the prisoner had *deliberately and cooly premeditated* the killing of the deceased; but as this evidence was more than a mere scintilla (*Wittkowsky v. Wasson,* 71 N. C., 451) tending to prove that he had, we think it was properly submitted to the jury.

Tested by a number of decisions of this Court, practically all of them made under the statute of 1893, dividing murder into two degrees, we are not able to say that that part of the charge of the Court objected to in the prisoner's third exception is legally erroneous. In *State v. Thomas, supra, State v. Dowden,* 118 N. C., 1145, and in every case where the matter has been discussed, this Court has held that to constitute murder in the first degree there must have been deliberation and premeditation on the part of the prisoner, before the act of slaying. But the statute fixed no time for such deliberation and premeditation, except that it must be before the fatal blow, and this Court has not fixed any, though it is said in Dowden's case, which lays down the rule stated by the Court

in the charge to the jury in this case, that "if there be an intent to kill and a simultaneous killing, then there is no premeditation." This we think is true as a self-evident proposition, if it had not been so stated by the Court. It therefore follows that no purpose the prisoner had to kill the deceased, at the time he threw the rock, could make him guilty of murder in the first degree, unless he had deliberately considered the matter before that time, and formed in his heart the murderous purpose. If he had done this, he is guilty of murder in the first degree; if he had not, he is only guilty of murder in the second degree.

It has been uniformly held by this Court that if the purpose to kill was formed before the killing took place, "no matter for how short a time," it would be within the power of the jury to find him guilty of murder in first degree, and not violate the law, nor their oaths as jurors. The Judge was not guilty of error when he followed the rule so often prescribed, though he would not have erred if he called the attention of the jury to the brevity of time, if they found that the intent was not formed before the time the difficulty occurred, and that the intent must have been formed before, and not simultaneously with the giving of the fatal blow.

Many of the other States of the Union have statutes dividing murder into two degrees, similar to ours, and they have undertaken to construe them as we have ours. In *State v. Thomas, supra,* Mr. Justice AVERY, who wrote the opinion of the Court, has cited and quoted from many of these cases. We will avail ourselves of the benefit of some of these quotations, which seem to have been adopted by this Court, as they have been quoted with approval in that opinion. "To say that murder was of the first degree, simply because it was intended at the moment (said Freeman in his note to *Whitford v. Com.,* 6 Randolph (Va.), 721, 18 Am. Dec., 781), would be to construe the words 'deliberate and premeditate'

out of the statute." "In the case of *Nye v. People,* 35 Mich.
(a Court over which Chief Justice COOLEY was presiding),
it is said to be a perversion of terms to apply the term 'de-
liberate' to any act which is done on a sudden impulse."
"This intent is defined by others as a steadfast resolve and
deep-rooted purpose, or a design formed after carefully con-
sidering the consequences, *Atkinson v. State,* 20 Tex., 522."
"The fixed resolve to kill, *People v. Forem,* 25 Cal., 361."
"In *State v. Carter,* 70 Mo., 594, this purpose to kill, it is
said, must be made in a cool state of the blood."

We have cited these cases from other States, not for the
purpose of showing that the construction put upon this statute
by our Court is wrong, but for the purpose of showing what
we think to be the meaning of what we have said. It seems
to us that in a case like this, where there is so little evidence
of deliberate and premeditated killing, that a charge though
not erroneous is not complete that does not explain to the jury
what is meant by deliberation and premeditation; that it
should do more than state to the jury that they must exist be-
fore the killing, but that it does not matter for how short a
time, so they existed before the fatal blow was stricken.

We can very well see why the learned Judge did not charge
the jury as to murder in the second degree, for the reason, as
he says, that the prisoner's counsel had admitted that he was
guilty of murder in that degree. The general rule is that
admissions of counsel, made on the trial as to any matter of
fact, will be taken to be true unless it plainly appears to the
Court not true. Indeed, it is said in *State v. Rash,* 34 N. C.,
382, 55 Am. Dec., 420, that it can never be error for the
Court to act upon such admissions. But it seems to us that
the rule is too strongly stated in that case, and that it
would be the duty of the Judge to correct an admission of fact
if it plainly appeared to the Court to be an erroneous ad-
mission. It would certainly be the duty of the Judge to cor-

rect an erroneous admission as to the law, as the Court is "bound to know the law." *State v. Austin*, 79 N. C., 624; *State v. Johnson*, 23 N. C., 353, 35 Am. Dec., 742. And we think the same rule would prevail where it plainly appeared to the Court that a fact admitted was not true.

But we see no error of fact or law in this admission, and no error in the Court's acting upon it as true. If there was error, it was not in the fact that the Court accepted this admission as true, but the fact that it resulted in the Court's failing to charge the jury as to murder in the second degree. It is contended on behalf of the State that it could not have done this, as the prisoner was convicted of murder in the first degree. This argument does not appeal to our judgment, for if the prisoner had been convicted of murder in the second degree, of which it was admitted he was guilty, of course it could have done him no harm to fail to charge on the second degree. So, we derive no aid from the fact that he was convicted in the first degree. Still, it may have been prejudicial to the prisoner not to charge the jury as to the law of murder in the second degree, as the charge was not as complete as we think it should have been on the first degree. If the Court had charged the jury upon murder in the second degree, they would have had both degrees of the crime of murder brought directly to their attention, in contrast the one with the other, and the distinctions pointed out. They would have been told in direct and distinct terms that the prisoner could be convicted of murder only in the second degree for what he did by throwing the rock, even if it was thrown for the purpose of killing the deceased, unless this purpose had been deliberately formed upon due consideration of the consequences of his act. For this reason, the fact that the Court did not charge upon the second degree of murder may have been prejudicial to the prisoner; and if it was, it was because such charge might have supplied a lack of fullness in the

charge on the first degree.   If it had been clearly explained
to the jury what constituted murder in the second degree (of
which, through his counsel, he had admitted himself to be
guilty), it may be that the jury would have coincided in that
view.   But in the absence of instruction as to that offense,
with only the issue of murder in the first degree placed before
them, with instructions only as to that offense, with evi-
dence of the homicide, it may well be that the jury held
against the prisoner that he was guilty simply because not in-
formed as to the constituent elements of the lesser offense.
It is true that where the trial Judge fails to charge upon a
point in the case, it is not reviewable error, unless he was
asked to do so, or the matter was called to his attention in some
proper manner.   But the rule is different where the Judge
charges erroneously; he is then reviewable if exception is
taken within the prescribed time, as was done here.   The
reason of the difference is that, in the first case, it was proba-
bly an inadvertence, and the presumption is that he would
have charged correctly if his attention had been called to the
matter; while, on the other hand, it is held that where the
Judge undertakes to charge the law, he must charge it cor-
rectly, or he is reviewable.   *State v. Austin, supra; Burton v.
Railroad,* 84 N. C., 192; *State v. Johnson,* 23 N. C., 353, 35
Am. Dec., 742.

When the Judge charged the jury it had been admitted by
counsel that the prisoner was guilty of murder in the second
degree, and the Court had accepted this admission as true,
and proceeded to charge the jury upon the assumption of the
correctness of that admission.   This being so, the whole case
depended upon the first count as to whether it was murder
in the first degree; and this depended upon the evidence show-
ing or tending to show that the killing had been done with
deliberation and premeditation, as heretofore explained in
this opinion.   The evidence shows that on the next morning

after the difficulty at the barn, when the prisoner had reason to believe the deceased was dead, he dodged into the woods, where he remained about two weeks; and his Honor in charging the jury said: "The State further contends that the defendant's admission that as soon as he thought the deceased had died, he at once threw down his axe and fled, is another circumstance to be considered by you as tending to satisfy you of defendant's guilt. The flight of a person immediately after the commission of a crime with which he was charged, is a circumstance in establishing his guilt, not sufficient in itself to establish it, but a circumstance to be considered by the jury in determining the probabilities for or against him. The weight to be attached to this circumstance is a matter for the jury to determine in connection with all the facts in the case." Such evidence is competent, and often considered material, where a crime has been committed and the party who committed it is not certainly known, to prove that a party suspected or charged with its commission has fled the country, and especially where there is a dispute or doubt as to the identity as to the perpetrator of the crime. In this case there were a number of eye-witnesses to the fact, and, besides, the prisoner's counsel had admitted the killing and that the prisoner was guilty of murder in the second degree. This being so, we are entirely unable to see why the attention of the jury should have been specially called to the prisoner's flight in the charge of the Court, and told that this was a *circumstance that they must consider* in connection with the other evidence in making up their verdict. We entirely fail to see how it shows or tended to prove *deliberation and premeditation* on the part of the prisoner, and that was the only matter the jury had to consider, as it had been admitted that the prisoner was guilty of murder in the second degree.

As the prisoner had gone upon the witness-stand in his own behalf, it was competent to prove his general character for

truth.  But the witness testified that he had the reputation of being "a little fussy."  This evidence was incompetent, as the prisoner had not put his character in evidence.  *State v. Traylor,* 121 N. C., 674.  It was not objected to, and there was no error in the Court's admitting it, but it is here mentioned because the case goes back for a new trial.  Under our social structure and the racial conditions which prevail here, it is sometimes difficult to prevent these things from having an influence upon the minds of good men in the trial of a negro for killing a white man; and this being so, we think it was at least unfortunate for the prisoner that the Court said near the close of the charge that if the jury found from the evidence that the prisoner killed the deceased wilfully, deliberately and with premeditation, they must find a verdict for murder in the first degree, "however much you may incline through sympathy to find a different verdict." We do not say that this charge is incorrect as a proposition of law.  The jury should find their verdict according to their convictions, founded upon the evidence, whatever that might be, without sympathy for the prisoner or any one else.  We only mention this as a circumstance in the course of the trial that may have prejudiced the prisoner's cause, and not as an error in the Court.  We know that it was not intended by the Court to prejudice his cause before the jury; but for the errors pointed out in this opinion, we think the prisoner should have a new trial.

New Trial.