ACME MANUFACTURING COMPANY v. JONAH McPHAIL.

(Filed 31 March, 1920.)

**Appeal and Error— Instructions— Evidence— Vendor and Purchaser— Carriers of Goods—Freight Charges.**

Where the evidence is conflicting as to whether the agent of the seller of fertilizers agreed to deliver them freight paid by him over a logging road beyond that of the common carrier by rail, and afterwards the seller's agent, before the goods were shipped, agreed with the purchaser by parole that the logging road freight charges would be paid by the. seller, though not so specified in the original and written contract, and as to whether the seller's agent had the authority to make the parol agreement and as to whether the purchaser was notified, before shipment, of this want of the agent's authority and agreed to take the goods under the original written contract, and as to whether the agent had the authority to bind his principal by the parol agreement, *Quaere?;* and held that a charge that limited the inquiry to the mere making of the agreement between the agent and defendant as to the payment of the freight charges over the logging road, and ommitted to instruct upon the evidence relating to the purchaser's notice of the agent's limitation

of authority, before shipment, and of the defendant's waiver of the parol agreement and his ordering the shipment out of the goods under the original written agreement, is reversible error. Revisal, sec. 535.

Civil action, tried before *Allen, J.,* and a jury, at September Term, 1919, of New Hanover.

This suit was brought originally to recover damages for the conversion of certain collateral securities placed with the defendant for collection and alleged to have been converted by him, but it was agreed that it should be tried as one for the recovery of the sum of $145.47. This amount was composed of $18.34, admitted to be due, and the balance of $127.13, it being what the defendant alleged he had paid for freight charges of a logging road beyond Dunn, N. C., and which, as he contended, the plaintiff had promised to pay on the goods shipped by plaintiff to defendant. The parties had dealings, under a contract, and defendant purchased his fertilizer from the plaintiff, which, he alleged, had to be shipped to his home seventeen miles from a railroad, but on a logging road. Plaintiff alleged that the fertilizer was to be shipped, under the contract, only to Dunn, and there delivered f. o. b. Defendant contended that after the contract was executed, J. F. Woodward, the plaintiff's salesman, called on him and inquired why he had not sent in any orders for fertilizer under the contract, and he replied that he could not handle it, as the other dealers were paying the log road freight, and he could not come out even if he had to pay the log road freight charges, thereupon Woodward said: "We will pay the freight." There was evidence that Woodward had no authority to bind the plaintiff in this way. Relying on this promise, the defendant ordered the goods and paid the log road freight, as plaintiff would not pay it. There was evidence for the plaintiff that before McPhail had ordered out any goods he was notified by the plaintiff, through Mr. J. Gilchrist McCormick, that Woodward had no authority to promise him that the plaintiff would pay the log road freight charges on the goods shipped by the company to him, and that after he received this notice, he ordered the company to ship the goods. There was further evidence that afterwards the defendant signed three or four notes for certain amounts, being the balance due by him to the company, which was for the full amount demanded by the plaintiff, there being no deduction on account of log road freight charges, but defendant claimed that, by agreement, they were to be deducted from the amount of the notes.

The judge charged the jury as follows: "If Mr. Woodward told the defendant in a conversation about ordering out fertilizers during the year 1914 from the plaintiff, that the company had decided to allow the log road freight, and he did this to secure the order for the fertilizers,

having been told that the defendant was not going to order out any unless that freight was paid, as other companies were paying the log road freight—I say, if that was done—then that statement by the agent Woodward was a representation that would be within the scope of his authority that would be binding, whether he had the expressed authority to do it or not, if he did in fact do so. That would be so in the absence of any subsequent written agreement. Then the question would arise as to whether the company signed a written agreement which did not embody this agreement with the agent. If you find there was such an agreement would plaintiff still be bound by the agent's representation? That raises a very interesting question, but upon consideration I will charge you that in any event if you find from the evidence that plaintiff's agent, Woodward, agreed with the defendant that the company would pay the log road freight, and at that time there had not been any fertilizers ordered out, then, I charge you that the sale was then executory, and if you further find, relying upon that agreement, defendant McPhail ordered out fertilizers, I charge you that would be a subsequent oral agreement binding on the parties. And the question about the signing of a written agreement which did not embody it would be a circumstance which you can consider in saying whether there was such an agreement or not; because it is contended by the defendant that there was such an agreement made with Mr. Gilchrist as well as with Mr. Woodward, and the contention of the plaintiff is that there was no such agreement made with Mr. Gilchrist, and that the fact that he signed a written agreement which did not embody any such agreement is a circumstance from which you can infer that there was such an agreement. In other words, the plaintiff contends that if he had any such agreement with Mr. Gilchrist that when he came to sign the contract he would have embodied it in the contract.

"Mr. Wright: We do not claim there was a definite agreement with Mr. Gilchrist. He said there was a talk there, and he would let us know later.

"Court: I say he contends what amounts to an agreement or conversation about it from which the defendant insists that there was such an agreement with Mr. Woodward, and the plaintiff insists that according to the evidence there was no such agreement with Mr. Gilchrist, and there was no embodying of it in the contract, and, therefore, there must not have been any such agreement at all.

"I am stating that so you will get clearly in your mind that the controversy in this case hinges largely, if not entirely, upon the question as to whether there was any such agreement as to this log road freight, and what I am doing now is stating to you the arguments and contentions

of the parties and it is for you to consider these contentions and say whether the defendant is indebted in the sum of $145, and some cents or only in the sum of $18 and some cents.

"You may take the case.

"Judge Rountree: Your Honor, call their attention to the fact that we contend the signing of the note was evidence of the fact that there was no such agreement.

"Court: When I said note I meant signing of the contract and note also.

"Jury returns for further information.

"Court: I understand that you wish some information, and I want to make the inquiry, is it some one of the jury who wants it, or is it the whole jury?

"Juror: The entire jury. We differ on your charge as to the authority of the statement that Mr. Woodward made to the defendant. Some claim you said if he made that statement that the company was liable for that statement, and some think you didn't make that statement.

"Court: I charged you they would be liable if Mr. Woodward made the agreement with him.

"Juror: Regardless of the written contract previously made?

"Court: I said they could take the written contract and note in consideration in saying whether Woodward made the agreement or not, they claiming he didn't make any such agreement. The defendant says he did make such an agreement, and you will take all the circumstances in consideration in saying whether he did make such an agreement, and if he did, then I charge you they would be bound by it.

Plaintiff duly excepted to the charge. Verdict for the defendant, and judgment thereon; plaintiff appealed.

WALKER, J., after stating the case as above: We will consider only one question. It appears that, after the agreement between Woodward and defendant was made, as alleged by the latter, and conceding, for the sake of argument, that it was made, the company notified defendant, through J. G. McCormick, that Woodward had no authority to make the agreement, and this was done before the defendant had ordered any of the goods. It was an important and material fact in the case if the jury found from the evidence that this notice was given. We said in *Wynn v. Grant,* 166 N. C., 47: "The principal is held to be liable upon a contract duly made by the agent with a third person: (1) when the agent acts within the scope of his actual authority; (2) when the contract, although unauthorized, has been ratified; (3) when the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his authority. The term 'apparent

authority' includes the power to do whatever is necessary to be done in order to carry into effect the principal power conferred upon the agent to transact the business or to effect the commission which has been intrusted to him." *Brimmer v. Brimmer,* 174 N. C., 435, 439.

Under this doctrine, even though Woodward did make the agreement with the defendant about the log road freight charges, it is contended that if, before the defendant acted thereon, he received notice of the agent's lack of authority, the agreement would have no effect upon the principal or make him liable for the unauthorized act of his agent, because up to the time of the notice that he had exceeded his authority, the defendant had done nothing, under the Woodward agreement, which would injure or prejudice him, if the authority of the agent is denied, or the agreement is held to be invalid, because of the want of authority in Woodward to make it. But we do not rest our decision on that ground, or decide that question. The judge's charge confined the jury to the single inquiry, whether or not the agreement was made, and the finding upon that question was held to be determinative of the defendant's liability. In thus instructing the jury, we think the court narrowed the investigation too much. There was another question involved, which should have been considered, and that is whether the defendant, after being notified by Mr. McCormick, if he was so notified, of Woodward's lack of authority to make the agreement and bind the company, consented that he should, the Acme Company should, forward the fertilizers under the written contract, and that the defendant would pay the log road freight. There was ample evidence of this understanding introduced by the plaintiff and supplemented by the defendant's acts and conduct. Mr. McCormick testified that the notice of Woodward's assumption of authority not conferred on him by the company, and of its unwillingness to pay the freight, was given to defendant, and after this was done, the defendant sent in orders for the fertilizers, and also signed the notes for the amount due for the same without any allowance or credit for the freight charges paid by him. We do not mean that these are the admitted facts, because the evidence in regard to them was conflicting, the defendant denying the notice and explaining his signing of the notes by stating that they were to be credited with the amount of the freight charges. But this conflict of evidence required the matter to be submitted to the jury to find the facts in regard to it. If the jury should find that defendant had agreed to order under the old contract, and not claim credit for the freight charges, the liability of defendant would not depend solely upon the making of the contract with Woodward. The charge therefore was erroneous in that respect, as it excluded from consideration the other important evidence in the case bearing upon the essential inquiry whether defendant had waived, or surren-

dered, all rights under the Woodward agreement, if he had any, and agreed to go back to the original contract and pay the freight charges. The two propositions were so closely connected and related as to be inseparable. The fault in the instruction was in making the case turn upon one fact, and ignoring all other matter just as essential to a decision. The judge substantially charged the jury that, if the agreement with Woodward was made, the verdict should be for the defendant, and if not made, then for the plaintiff, thereby eliminating other evidence having an important bearing upon the question of liability for the log road freight charges.

In *S. v. Merrick,* 171 N. C., at 795, *Justice Hoke* says: "The authorities are at one in holding that, both in criminal and civil causes, a judge in his charge to the jury should present every substantial and essential feature of the case embraced within the issue and arising on the evidence, and this without any special prayer for instructions to that effect. Charged with the duty of seeing that impartial right is administered, it is a requirement naturally incident to the great office he holds, and made imperative with us by statute law. Rev., 535: 'He shall state in a plain and correct manner the evidence in the case, and explain the law arising thereon,' and a failure to do so, when properly presented, shall be held for error. When a judge has done this, charged generally on the essential features of the case, if a litigant desires that some subordinate feature of the cause or some particular phase of the testimony shall be more fully explained, he should call the attention of the court to it by prayers for instructions or other proper procedure; but, as stated, on the substantive features of the case arising on the evidence, the judge is required to give a correct charge concerning it." Citing *Simmons v. Davenport,* 140 N. C., 407; *S. v. Foster,* 130 N. C., 666, and other authorities.

It was held in *Simmons v. Davenport, supra:* "The rule which requires that a complaining party should ask for specific instructions if he desires a case to be presented to the jury by the court in any particular view does not, of course, dispense with the requirement of the statute that the judge shall state in a plain and correct manner the material portions of the evidence given in the case and explain the law arising thereon. Rev., 535." To the same effect are *Carleton v. State,* 43 Neb., 373, and *State v. Barham,* 82 Mo., 67, cited and quoted from in the *Merrick case.*

It was, therefore, the duty of the court to have broadened the charge so as to embrace the material portions of the evidence, with proper explanation of the law arising thereon. This was not done, and constituted error, which entitles the plaintiff to another jury.

New trial.