# CRIMINAL CASES.

## COMMONWEALTH *vs.* DANIEL HACKETT.

In an indictment against A. B. for murder by stabbing, a declaration by the deceased made immediately after the infliction of the mortal blow, "A. B. has stabbed me," is admissible in evidence, as a part of the *res gestæ*, although the defendant had run away before the declaration was made.

One who has wilfully inflicted upon another a dangerous wound, with a deadly weapon, from which death ensued, is guilty of murder or manslaughter, as the evidence may prove, although, through want of due care or skill, the improper treatment of the wound by surgeons may have contributed to the death.

INDICTMENT for the murder of Henry Gillen.

At the trial in this court, evidence was offered by the government tending to show that the defendant suddenly approached the deceased in the night, and stabbed him in two places in the abdomen, and immediately ran away; and that the deceased died nineteen days thereafter.   At the moment when the stabs were inflicted, Gillen cried out " I'm stabbed."   John Butler a witness for the Commonwealth, testified that he heard these

words, and at once went to Gillen, and reached him within twenty seconds after the exclamation was made, and was the first person who got there. The attorney general then put to the witness this question : " When you got to Gillen, what did he say, if anything ? " This question was objected to, but allowed to be put, and the witness answered that the deceased said : " I 'm stabbed — I'm gone — Dan Hackett has stabbed me."

The defendant contended that there was evidence to show that the wounds of the deceased were unskilfully and improperly treated by the surgeons who attended him, and requested the court to instruct the jury as follows : " 1. The rule that the death must happen within a year and a day is one of limitation only, and does not change the burden of proof, or release the government from the duty of proving affirmatively that the deceased died of the wounds alleged in the indictment. 2. It is not enough to satisfy this burden for the government to prove that without the wounds the deceased would not have died. 3. If the death was caused by the improper applications or improper acts of the surgeons in dressing the wounds, the case of the government is not made out."

The court instructed the jury in conformity with the first clause of the instructions asked for, but declined to give the others, and in place thereof instructed them, substantially, that the burden of proof was upon the government to prove beyond a reasonable doubt that the deceased died of the wounds inflicted by the defendant, but that this general rule required explanation in its application to certain aspects of the present case ; that a person who has inflicted a dangerous wound with a deadly weapon upon the person of another cannot escape punishment by proving that the wound was aggravated by improper applications or unskilful treatment by surgeons ; that if, in the present case, they were satisfied that the wounds inflicted by the defendant were improperly and unskilfully treated by the surgeons in attendance, and that such treatment hastened or contributed to the death of the deceased, the defendant was not for this reason entitled to an acquittal; but

12 *

that the rule of law was that, if they were satisfied beyond a reasonable doubt that the defendant inflicted on the deceased dangerous wounds with a deadly weapon, and that these wounds were unskilfully treated, so that gangrene and fever ensued, and the deceased died from the wounds combined with the mal-treatment, the defendant was guilty of murder or manslaughter according as the evidence proved the one or the other; that, if they were satisfied not only that death would not have ensued but for the wounds, but also that the wounds were, when in flicted, dangerous, the defendant would be responsible, although improper and unskilful treatment might have contributed to the death; that the law does not permit a person who has used a deadly weapon, and with it inflicted a dangerous wound upon another, to attempt to apportion his own wrongful and wicked act, and divide the responsibility of it, by speculating upon the question of the extent to which unskilful treatment by a surgeon has contributed to the death of the person injured; but, if they were in doubt whether the wounds were dangerous, or caused or contributed to the death, or whether the deceased might not have died from the unskilful treatment alone, then the defendant would be entitled to an acquittal.

The defendant was found guilty of manslaughter, and alleged exceptions.

*B. F. Butler*, for the defendant, cited, on the first point, *The State* v. *Tilly*, 3 Ired. 424; *Rex* v. *Clarke*, 2 Stark. R. 242; *Regina* v. *Walker*, 2 M. & Rob. 212; and, on the second point, *The State* v. *Morea*, 2 Alab. 275; *The State* v. *Baker*, 1 Jones Law R. (N. C.) 267; *The State* v. *Scott*, 12 Louis. Ann. R. 274, *The State* v. *Wiltberger*, 3 Wash. C. C. 515.

*Foster*, A. G., for the Commonwealth.

BIGELOW, C. J. The court have given to this case the most careful and deliberate consideration, not only on account of the very grave nature of the charge of which the defendant has been found guilty, but also because the exceptions taken at the trial have been urged by the learned counsel for the prisoner with great earnestness and apparent confidence.

The objection to the admission in evidence of the declarations

of the deceased, made immediately after the infliction of the alleged mortal blows, is put on the ground that it was a mere narration of a past event, uttered in the absence of the defendant, and therefore in its nature essentially hearsay testimony. If we regarded only the form of words in which the declaration was made, this objection would be well founded. The language used by the deceased apparently referred to an event which had passed. But this is by no means a decisive consideration. The argument would have been equally strong, in case the words had been uttered as soon as the knife had been withdrawn from the body of the deceased, if it had appeared that, from any cause, the defendant could not then have heard them. But it is necessary, in order to determine the question of the competency of this evidence, to regard not only the language used, but also the circumstances under which it was uttered. If it was a narrative statement, wholly unconnected with any transaction or principal fact, it would be clearly inadmissible. But such was not its character. It was uttered immediately after the alleged homicidal act, in the hearing of a person who was present when the mortal stroke was given, who heard the first words uttered by the deceased, and who went to him after so brief an interval of time that the declaration or exclamation of the deceased may fairly be deemed a part of the same sentence as that which followed instantly after the stab with the knife was inflicted. It was not therefore an abstract or narrative statement of a past occurrence, depending for its force and effect solely on the credit of the deceased, unsupported by any principal fact, and receiving no credit or significance from the accompanying circumstances. But it was an exclamation or statement, contemporaneous with the main transaction, forming a natural and material part of it, and competent as being original vidence in the nature of *res gestæ.* The true test of the competency of the evidence is not, as was urged by the counsel for the defendant, that it was made after the act was done, and in the absence of the defendant. These are important circumstances, entitled to great weight, and, if they stood alone, quite decisive. But they are outweighed by the other facts in proof;

from which it appears that they were uttered after the lapse of so brief an interval, and in such connection with the principal transaction, as to form a legitimate part of it, and to receive credit and support as one of the circumstances which accompanied and illustrated the main fact, which was the subject of inquiry before the jury. The case of *Commonwealth* v. *M'Pike*, 3 Cush. 184, is an authority which goes much further to sanction the competency of evidence of this nature than is necessary, in order to sustain the ruling under which the declarations of the deceased were admitted in the present case. It is very true that the rule, which renders *res gestæ* competent, has been often loosely administered by courts of justice, so as to admit evidence of a dangerous and doubtful character, and that the tendency of recent decisions has been to restrict within the most narrow limits this species of testimony. *Lund* v. *Tyngsborough*, 9 Cush. 36. But to exclude it in the present case would be practically to say that no declaration or statement, however near to the principal fact, or however important and material as giving to it color and significance, could ever be admitted in proof. We are disposed to apply the rule strictly, and to exclude everything which does not clearly come within its just and proper limitations. But we cannot see that they were exceeded in the admission of the evidence, to which exception was taken at the trial of the case at bar.

We have looked with care into the authorities which bear on the correctness of the instructions given to the jury, relating to the unskilful or improper treatment of the wounds alleged to have been inflicted by the prisoner upon the body of the deceased. We find them to be clear and uniform, from the earliest to the latest decisions. In one of the first reported cases it is said that " though a wound may be cured, yet if the party dieth thereof," it is murder." *The King* v. *Reading*, 1 Keb. 17. The same principle is stated in 1 Hale P. C. 428, thus : " If a man give another a stroke which it may be is not in itself so mortal but that with good care he might be cured, yet if he die of this wound within a year and a day, it is homicide or murder, as the case is, and so it has been always ruled." " If a man

receives a wound, which is not in itself mortal, but either for want of helpful applications, or neglect thereof, it turns to a gangrene, or a fever, and that gangrene or fever be the immediate cause of his death, yet, this is murder or manslaughter in him that gave the stroke or wound, for that wound, though it were not the immediate cause of death, yet, if it were the mediate cause thereof, and the fever or gangrene was the immediate cause of his death, yet the wound was the cause of the gangrene or fever, and so consequently is *causa causati.*" In *Rew's case*, as stated in 1 East P. C. c. 5, § 113, it was determined that " though the stroke were not so mortal in itself but that with good care and under favorable circumstances the party might have recovered, yet if it were such from whence danger might ensue, and the party neglected it, or applied inefficacious medicines, whereby the wound which at first was not mortal in itself turned to a gangrene, or produced a fever, whereof he died, the party striking shall answer for it, being the mediate cause of the death." J. Kel. 26. So, in a more recent case, the jury were instructed that if the defendant wilfully and without justifiable cause inflicted a wound, which was ultimately the cause of death, it made no difference whether the wound was in its nature instantly mortal, or whether it became the cause of death by reason of the deceased not having adopted the best mode of treatment. The real question is, was the wound the cause of death. *Regina* v. *Holland*, 2 M. & Rob. 351. From these and other authorities, the well established rule of the common law would seem to be, that if the wound was a dangerous wound, that is, calculated to endanger or destroy life, and death ensued therefrom, it is sufficient proof of the offence of murder or manslaughter; and that the person who inflicted it is responsible, though it may appear that the deceased might have recovered if he had taken proper care of himself, or submitted to a surgical operation, or that unskilful or improper treatment aggravated the wound and contributed to the death, or that death was immediately caused by a surgical operation rendered necessary by the condition of the wound. 1 Russell on Crimes, (7th Amer. ed.) 505. Roscoe's Crim. Ev. (3d ed.) 703, 706.

3 Greenl. Ev. § 139. *Commonwealth* v. *Green*, 1 Ashm. 289. *Regina* v. *Haines*, 2 Car. & Kirw. 368. *State* v. *Baker*, 1 Jones Law R. (N. C.) 267. *Commonwealth* v. *M'Pike*, 3 Cush. 184. The principle on which this rule is founded is one of universal application, and lies at the foundation of all our criminal jurisprudence. It is, that every person is to be held to contemplate and to be responsible for the natural consequences of his own acts. If a person inflicts a wound with a deadly weapon in such manner as to put life in jeopardy, and death follows as a consequence of this felonious and wicked act, it does not alter its nature or diminish its criminality to prove that other causes coöperated in producing the fatal result. Indeed it may be said that neglect of the wound or its unskilful and improper treatment, which were of themselves consequences of the criminal act, which might naturally follow in any case, must in law be deemed to have been among those which were in contemplation of the guilty party, and for which he is to be held responsible. But however this may be, it is certain that the rule of law, as stated in the authorities above cited, has its foundation in a wise and sound policy. A different doctrine would tend to give immunity to crime, and to take away from human life a salutary and essential safeguard. Amid the conflicting theories of medical men, and the uncertainties attendant on the treatment of bodily ailments and injuries, it would be easy in many cases of homicide to raise a doubt as to the immediate cause of death, and thereby to open a wide door by which persons guilty of the highest crime might escape conviction and punishment.

The instructions to the jury at the trial of this case were in strict conformity with the rule of law as it has always been understood and administered. Indeed the learned counsel does not attempt to show that it has ever been held otherwise. His argument on this point is confined to the signification which he attributes to the word maltreatment. This he assumes to be either wilful ill treatment, involving bad faith, of the wound of the deceased, or such gross carelessness in its management by the surgeons as would amount to criminality. But such is not its true meaning. Maltreatment may result either from

ignorance, neglect or wilfulness. It is synonymous with bad treatment, and does not imply, necessarily, that the conduct of the surgeons, in their treatment of the wounds of the deceased, was either wilfully or grossly careless. Nor was it used in any such narrow or restricted sense in the instructions given to the jury. On the contrary, in the connection in which it stands, it signifies only improper or unskilful treatment, and was intended to apply to the evidence as it was developed at the trial, and to meet the specific prayer for instruction on this point, which was submitted in behalf of the prisoner. There is nothing in the exceptions which shows that there was any evidence of gross carelessness or wilful mismanagement on the part of the surgeons; nor was any such suggestion made at the trial. The statement in the exceptions is that "the defendant contended that there was evidence to show that the wounds of the deceased were unskilfully and improperly treated by the surgeons who attended him," and the instructions asked for by the learned counsel refer only to improper applications and improper acts of the surgeons, and contain no intimation of any defence founded on alleged bad faith or criminal neglect in the treatment of the wounds inflicted by the prisoner on the body of the deceased. The distinction now suggested between maltreatment occasioned by such causes, and that arising from a want of due care and skill, (if well founded, on which point we express no opinion,) was not raised at the trial, and cannot be the foundation for setting aside the verdict.

*Exceptions overruled.*