[No. 20650.   In Bank. — September 10, 1890.]

THE PEOPLE, RESPONDENT, v. AMELIA CHRISTENSEN, APPELLANT.

CRIMINAL LAW — EVIDENCE — TESTIMONY OF DEFENDANT — REOPENING CASE — DISCRETION OF COURT. — Upon a criminal trial it is discretionary with the court to grant or refuse permission to the defendant to testify on her own behalf where request therefor is made after the evidence had all gone to the jury, and the court had proceeded with its charge to that body as to the law governing the case; and its action in refusing such request is not an abuse of its discretion.

ID. — GRAND LARCENY — INSTRUCTION — REASONABLE DOUBT — DEFINITION OF OFFENSE. — Where a defendant is accused of grand larceny, an instruction to the jury that "unless the prosecution has proved beyond a reasonable doubt that the defendant feloniously stole the money of the complaining witness it is your duty to acquit the defendant," is not erroneous upon the ground that it does not distinguish between and define grand and petit larceny, if the defendant asked for no further definition of the offense, and the proof showed beyond question that if any larceny was committed it was grand larceny.

ID. — ASSUMING FACT IN INSTRUCTION — POSSESSION OF MONEY BY PROSECUTING WITNESS. — Such instruction is not erroneous, as assuming that the prosecuting witness had money on the occasion of the alleged theft, but correctly conveys the idea that unless it is proved beyond a reasonable doubt that the prosecuting witness had money which was stolen by the defendant as charged, they should acquit.

ID. — FAILURE TO DEFINE "REASONABLE DOUBT." — The failure of the court in its charge to define a "reasonable doubt" is not error where the defendant did not ask for such a definition.

ID. — UNPERSPICUOUS INSTRUCTION AS TO EVIDENCE — REASONABLE DOUBT. — An instruction to the jury, that "it is not a matter of the number of

witnesses, but the preponderance, and you may, if you retain a reasonable doubt, give the defendant the benefit of it," although not specially clear and perspicuous, is not erroneous, as the jury must have understood it as importing that the number of witnesses on either side was of no controlling force, but that the preponderance of evidence must show guilt of the defendant beyond a reasonable doubt, else they must acquit.

ID. — CHARGE AS TO MATTERS OF FACT—STATING TESTIMONY. — An instruction to the jury that "it appears that these saloon-keepers, who were in the Louisiana saloon at this time, on the way from their ordinary places of business, according to their testimony; that they engaged in playing cards, and the prosecuting witness says that on this occasion he was robbed of his money, and there is no explanation why this defendant was there except that she was the wife of the witness, or was with the other woman who was there," does not state to the jury as a matter of fact that the Louisiana saloon was the place where the alleged larceny took place, but is a mere statement of the evidence, and is not erroneous.

ID. — INSTRUCTION DISCREDITING WITNESSES FOR DEFENSE. — It is prejudicial error for the court so to instruct the jury as to convey to their minds that the defendant's witnesses were a disreputable class, and to tend to discredit them, as persons whose evidence might well be disregarded.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*P. F. Dunne*, for Appellant.

*Attorney-General Johnson*, for Respondent.

FOOTE, C. — The defendant was convicted of grand larceny, and she appeals from the judgment therein rendered, and from an order refusing a new trial. It is primarily claimed in her behalf that the evidence is entirely insufficient to support the verdict. The record shows very clearly that the defendant was positively identified by the prosecuting witness as the person who stole his money, although he was somewhat intoxicated at the time, and Annie O'Farrell, a witness for the defendant, although she positively swears that the defendant stole nothing, nevertheless states that she, the defendant, and the prosecuting witness were in company with each other at saloons (naming them) at the time

when the money is alleged to have been stolen, and although several witnesses for the defense swore to facts which negatived such statement of the prosecuting witness, yet, as the jury saw and heard those who testified before them, and resolved the conflict between them against the innocence of the defendant, we are not prepared to say that the verdict was clearly wrong. It is also very earnestly urged that the court erred in not permitting the defendant to testify in her own behalf when she desired to do so. The evidence had all gone to the jury, and the court had proceeded with its charge to that body as to the law governing the case, when this offer was made. It thus became discretionary with the court to grant or refuse the request, and we cannot declare that its action was an abuse of its discretion. (*People* v. *Ross*, 65 Cal. 105; Pen. Code, secs. 1093, 1094.)

Error on the part of the court is alleged in its instruction to the jury, that " unless the prosecution has proved beyond a reasonable doubt that the defendant feloniously stole the money of the complaining witness, it is your duty to acquit the defendant." This, it is said, was not a definition of larceny, unless of larceny in general, and that, as larceny consists of grand and petit larceny, the instruction was defective. In answer to this, it may be said that the defendant asked for no further definition of the offense; the information charged grand larceny, and the proof showed beyond cavil or question that if any larceny was committed it was grand larceny. This being so, the defendant could not have been prejudiced. Further, it is said that the court assumed that the prosecuting witness had money on the occasion of the alleged theft. We do not so understand the instruction. In effect, it conveyed the idea that unless it is proved beyond reasonable doubt that the prosecuting witness had money which was stolen by the defendant as charged, they should acquit. This was entirely proper. It is also said that the court did not define what a reasonable

doubt is. If the defendant had desired such a definition, she should have asked for it; but she did not choose to do so, being seemingly satisfied that the jury knew what a reasonable doubt was. (*People* v. *Gray,* 66 Cal. 277, and cases cited.) Further, complaint is made that the court instructed the jury: "It appears that these saloon-keepers, who were in the Louisiana saloon at this time, on the way from their ordinary places of business, according to their testimony; that they engaged in playing cards, and the prosecuting witness says that on this occasion he was robbed of his money, and there is no explanation why this defendant was there except that she was the wife of the witness, or was with the other woman who was there." It is claimed that by this the court prejudicially told the jury that, as a matter of fact, the Louisiana saloon was the place where the alleged larceny took place. This is a mistake. The court stated that the prosecuting witness said that it was on the occasion when the saloon-keepers were playing cards in the Louisiana saloon that he was robbed of his money, but the court did not state to the jury that such was the fact. As to the statement about the explanation given why the defendant was present, it cannot be prejudicial to her even if it was a fact that she was present as a wife with her husband, or with a female companion; and there does not seem to have been any other explanation consistent with her innocence why she should have been there.

Again, it is said that error was committed in giving this portion of the charge: "It is not a matter of the number of witnesses, but the preponderance, and you may, if you retain a reasonable doubt, give the defendant the benefit of it." The first clause of the language is the part at which condemnation is directed. Evidently the court meant to say, and the jury must have so understood it, that the number of witnesses either upon one side or the other was of no controlling force,

but that the preponderance of evidence which would show her guilt beyond a reasonable doubt must be against the defendant, else they must acquit her. It is true, the language used, and its connection, is not specially clear and perspicuous, but it is not susceptible of any other rational construction than that which we have given it.

There is another portion of the charge to which strong objection is made. It is this: " You may consider the probabilities of this class of witnesses of telling the truth." The connection in which the language was used in the charge can be best appreciated by stating that portion of the charge which immediately precedes, and another portion which occurs in a latter part of the charge, thus: " There is nothing calling for any particular enumeration of witnesses, or the statement of their testimony. It appears that these saloon-keepers, who were in the Louisiana saloon at this time, on the way from their ordinary places of business, according to their testimony; that they engaged in playing cards, and the prosecuting witness says that on this occasion he was robbed of his money, and there is no explanation given why this defendant was there except that she was the wife of the witness, or was with the other woman who was there. If you consider the probabilities of the story, —the complaining witness pointing out this woman as being the guilty one, as the officer states,— you may consider the probabilities of his making a mistake, and whether he tells the truth, or intends to tell the truth, of what he himself believes, or he saw there, and also of this class of witnesses on the other side, of telling the truth. . . . . As to the matter of policy, as to bringing in a verdict of guilty in regard to these places, that is a matter for you to take into consideration as citizens rather than as jurors here." It must be borne in mind that the witnesses " on the other side," that is, those for the defendant, were, according to the record, a woman who frequented saloons on the Barbary Coast (well

known in San Francisco, and throughout this state, per-
haps, as a rather disreputable locality), and who was in
company with the defendant and the prosecuting wit-
ness at these saloons, and of saloon-keepers from that
unsavory locality.

Therefore it is plain, from the language of the court,
that it contrasted the probabilities of the defendant's
story of the prosecuting witness, and his pointing out
the woman as the guilty one to the policeman, as against
the witnesses for the defense, whom it unnecessarily
denominates witnesses of "that class," "that class"
evidently conveyed the idea to the jury that it was a
disreputable class, the probabilities of whose testimony
they were to weigh, while nothing was said tending to
throw any discredit upon the prosecuting witness.  And
then, at the close, the statement as to the policy of
bringing in a verdict "in regard to these places, that it
was a matter for consideration as citizens rather than
jurors," was likely to convey the idea that "these
places," — that is, saloons on the Barbary Coast, — were
very bad places, where such crimes as was here charged
probably took place, and which the jury were told that
as such they had nothing to do with it in their verdict
as a matter of policy, yet, as citizens, they had a right to
take the matter into consideration, the court evidently
thinking that " these places" being " bad places," needed
good citizens to look after, and at least condemn, if not
suppress them; all of which certainly tended to discredit
the witnesses by the court, which ought never to be
done.  In this case the testimony of the prosecuting
witness alone was depended upon to identify the defend-
ant as having stolen his money, and he was evidently
also a drunken man at the time the theft is alleged to
have taken place, and an utter stranger before that to
her.  Against him were the defendant's witnesses,
designated by the court as heretofore stated.  We are
constrained to say, therefore, that the portion of the

charge in question was erroneous, being well calculated to impress the jury with the idea that her witnesses were a disreputable class of people, whose evidence might well be disregarded, and for that reason the judgment and order should be reversed, and we so advise.

GIBSON, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed.