MILES H. AUSTIN, Appellant, v. ALMOND C. WHITCHER.

**Evidence:** PLATS: ADMISSIBILITY. An uncertified plat of land
1   when shown to be a substantially correct representation of the premises, is admissible on an issue as to the acreage when offered merely for the purpose of showing in a general way the size and shape of the farm.

**Same.** A plat pertaining to the original survey of lands which
2   is kept by a county official, when properly certified, is presumptive evidence of the facts therein recited; and it is not rendered inadmissible by reason of the fact that the officer's certificate thereto recites facts contained in the plat.

**Exclusion of evidence:** PREJUDICE. When the court instructs that
3   the law of a foreign state is presumed to be the same as that of Iowa, refusal to receive in evidence decisions of the foreign state supporting a similar statute is not prejudicial.

**Compromise and settlement.** An agreement that a vendee of land may withhold a portion of the purchase price to cover any possible shortage in the quantity will support a finding that the same constituted a settlement of the question of shortage.

*Appeal from Buchanan District Court.*— HON. FRANKLIN C. PLATT, Judge.

THURSDAY, MARCH 7, 1907.

REHEARING DENIED THURSDAY, OCTOBER 24, 1907.

THIS is a suit to recover damages for the failure of title to three acres of land, which the plaintiff alleges he purchased of the defendant. Trial to a jury, and verdict and judgment for the defendant. The plaintiff appeals.— *Affirmed.*

*Cook & Cook,* for appellant.

*Chas. M. Young* and *E. E. Hasner,* for appellee.

SHERWIN, J.— The defendant was the owner of land in Stark county, Ill., described as the W. ½ of the N. E. ¼ of section No. 1, and the S. ½ of the S. E. ¼ of the N. W. ¼ of section No. 1, and another tract of land described by meets and bounds; the entire tract being supposed to contain one hundred and sixteen acres. He negotiated a sale of this land to the plaintiffs through a land agent; the price to be paid therefor being the sum of $8,120, which would be at the rate of $70 per acre. At the time the contract was entered into the defendant's wife was visiting in California, and the deed conveying the land to the plaintiff was executed by the defendant, and forwarded to California, to be executed by his wife, and thereafter the deed was returned to the defendant. The deed states that the land conveyed amounted to one hundred and sixteen acres, more or less. Before the transaction was closed by

the payment of the price named in the deed and the delivery of the deed to the plaintiff, it was discovered by the parties that the farm did not contain one hundred and sixteen acres, and there was a mutual agreement that the plaintiff should retain from the purchase price agreed upon, the sum of $175 to cover any possible shortage in the acreage of the farm.   Payment for the farm was made on the basis of this settlement, and it seems to have been afterwards discovered and agreed that the actual land conveyed to the plaintiff in the deed was one hundred and twelve and one-half acres. Thereafter it was found that three acres of land in the southwest corner of the S. E. ¼ of the N. W. ¼ of section 1, being the land designated in argument as the land lying on the west side of the Spoon river, was not owned by the defendant; but that the title thereto was in a third person. This action was brought to recover damages for the failure of title to the three acres in question.

The controlling fact question in the case is whether, notwithstanding the failure of title to these three acres, the plaintiff in fact received one hundred and twelve and one-half acres of land by the conveyance from the defendant.   Before the purchase was closed by the payment of the price and delivery of the deed, the plaintiff caused the land to be surveyed, and, according to the survey so made, there was but one hundred and twelve and one-half acres of land in the farm, including the three acres west of the Spoon river, and the surveyor who made this survey was called as a witness on the part of the plaintiff, and testified to the correctness of his work.   No other survey seems to have been made for the purpose of the trial, but the defendant was permitted to put in evidence a plat of the land known as " Exhibit 1 " which does not seem to have been certified to by any one, and another plat known in the record as " Exhibit 2 " which was certified to by the clerk of the circuit court, who was at the time *ex officio* recorder of the county of Stark where the land was situated.

1. Evidence: plats: admissibility.

The admission of these two exhibits is assigned as error. "Exhibit 1" was offered in connection with the testimony of the defendant, and was to the effect that it was an approximately correct plat of the farm in controversy. We think there was no error in its admission. Oliver, the surveyor, had already testified as to the survey made by him, and the correctness thereof, and evidence had been introduced tending to show that there was error in his survey and the plat thereof; that the number of acres shown by his plat was not in fact the correct amount of land contained in the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$. It does not seem to have been intended as independent evidence in itself, but was offered merely for the purpose of showing in a general way his claim as to the size and shape of his farm. Furthermore, so far as it indicated the amount of land in the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 1, it corresponded with the amount designated in "Exhibit 2," to which we shall presently more particularly refer; and, if its introduction in evidence were technically improper, it would not constitute prejudicial error.

The certificate attached to "Exhibit 2" certified that Redfield was the custodian of the files and records of the county of Stark, pertaining to surveys, titles, records of deeds, etc., and that the plat which it accompanies was a true copy of the government survey and plat of the N. $\frac{1}{2}$ of section 1 in township No. 13 N., range 6 E. of the fourth P. M., in the county of Stark and State of Illinois, and that according to the government survey the W. $\frac{1}{2}$ of said N. E. $\frac{1}{4}$ of section 1 contained seventy-five and fifty one hundredths acres, that the E. $\frac{1}{2}$ of said N. W. $\frac{1}{4}$ of section 1 contained seventy-two and sixty one hundredths, and that the S. E. $\frac{1}{4}$ of said N. W. $\frac{1}{4}$ of section 1 contained forty acres, as the same appeared from the records in his office. The appellant's principal objection to the introduction of the exhibit is that the plat itself showed, as well as the certificate attached thereto, that the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ contained seventy-five and fifty one hundredths acres, and

the ground upon which the objection is based is that the certificate does not set forth that the clerk was the official custodian of the map which he set forth as a part of the government survey; and, further, because the original of "Exhibit 2" would not prove itself to be a government survey, and it was not authenticated as the work of the person purporting to make it so far as the copy shows such fact. The further objection is made to the exhibit that the clerk went beyond his certificate as to the correctness of the plat, and certified as a matter of fact the amount of land in the tract as shown by the government survey. Code, section 4618, provides that "historical works, books of science or art, and published maps or charts, when made by persons indifferent between the parties, are presumptive evidence of facts of general notoriety or interest therein stated." This section is the same as section 3653 of the Code of 1873; and in *Nosler v. C. B. & Q. Ry. Co.,* 73 Iowa, 268, we held that a map of the city of Ottumwa purporting to have been made by the city engineer, which it was shown was recognized and used in the city as substantially correct, was properly received in evidence. Section 4635 of the Code states that the duly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein, shall be evidence in all cases, of equal credibility with the original record or paper so filed. This section of the statute simply announces a rule which is generally recognized by all courts. 2 Elliott on Evidence, section 1480.

It is a matter of general knowledge and observation that copies of the original surveys and plats of the territory embraced therein are to be found in the county offices throughout the State, and that such surveys and plats **2. SAME.** are generally recognized as correct, and are in fact treated as presumptive evidence of facts stated therein. In 3 Elliott on Evidence, section 1856, it is said: "Some plats which are not competent evidence them-

selves, when adopted by a city or State or when placed on record, may become competent evidence." See, also, on this subject, *Barrett v. Murphy,* 140 Mass. 133; *Olsen v. Rogers,* 120 Cal. 225; *Schwede v. Hemrich,* 29 Wash. 124 (69 Pac. 643). The certificate attached to the plat in "Exhibit 2" shows that the original of the plat in question was a part of the record of Stark county, and that "Exhibit 2" was itself a true copy thereof; and, under the rule announced in the cases cited above, we think there was no error in admitting the plat and certificate in evidence. The objection that the clerk certified as to the number of acres in this particular tract as shown by the government survey is of no merit, because the plat itself furnishes the same information, and his certificate thereto amounted to no more than a reiteration of the fact that he had furnished a true copy of the plat and survey on file in his office.

The plaintiff offered in evidence two decisions of the Supreme Court of Illinois, supporting a provision of the Illinois statute, permitting actions for breach of warranty in deeds. There was no error in the ruling, for the law presumes, in the absence of a showing to the contrary, that the law of Illinois on the subject is the same as that of Iowa, and here the action is maintainable, and the court instructed in line with the appellant's contention.

3. EXCLUSION OF EVIDENCE: prejudice.

The appellant makes complaint of several of the instructions given to the jury, but we are unable to find reversible error in any of them. Taken as a whole, they fairly presented to the jury the issue between the parties.

4. COMPROMISE AND SET- TLEMENT.

It is finally said that a new trial should have been granted the plaintiff because of the insufficiency of the evidence to support the verdict. While the evidence is somewhat meager as to the actual number of acres which the plaintiff received by his conveyance, it cannot be said, as a

matter of law, that there is no evidence tending to show that the land conveyed did not amount to one hundred and twelve and one-half acres. But, aside from this, the jury would have been justified in finding that the settlement to which we have heretofore referred was a final adjustment of the entire question between the parties.

The verdict and judgment should stand, and the case is therefore *affirmed*.