[Crim. No. 2136.  In Bank.—August 3, 1918.]

THE PEOPLE, Respondent, v. A. O. FOWLER, Appellant.

CRIMINAL LAW—MURDER—SUFFICIENCY OF INFORMATION—CHARGE IN LANGUAGE OF STATUTE.—An information for murder is not defective in failing to set forth the manner and means by which the alleged murder was committed, where it charges that at a time and place stated the defendant did willfully, unlawfully, and feloniously, and

of his malice aforethought, kill and murder a named human being, as a charge in the language of the statute is sufficient.

ID.—DELIBERATION AND PREMEDITATION.—The statement in an information for murder that the defendant did "of his malice aforethought" kill and murder a named human being is equivalent to an averment that the act was committed with deliberation and premeditation.

ID.—EXAMINATION OF JUROR—IMPROPER QUESTION.—In a prosecution for murder it was improper to ask a proposed juror if he could give the same credit to the defendant's testimony, were he to go upon the stand, his interest in the result being taken into consideration, that he could give to any other witness, as the defendant's interest in the result was only one of the things to be taken into consideration.

ID.—EVIDENCE—CONFESSION—FOUNDATION FOR.—It is the duty of the trial judge, when the question is raised in a criminal case whether or not a confession of the defendant was voluntarily made, to hear evidence on the subject, before allowing the proof of said confession, and to admit the proof only in the event that he finds it to have been voluntary; and he has the right to determine the fact from the evidence and to make a ruling accordingly, his decision of the question, where the evidence is conflicting, being subject to the universal rule applicable to cases on appeal, that the reviewing court will uphold the decision if there is substantial evidence to support it.

ID.—VOLUNTARY CHARACTER OF STATEMENT—RIGHT OF JURY TO PASS ON—FAILURE TO GIVE INSTRUCTION.—In a prosecution for murder, where the evidence on the question of whether a statement of the defendant introduced in evidence was voluntary or not was not so positive and certain that it should not have been left to the jury to reconsider it upon their final consideration of the case, even if the statement was a confession, the failure of the court to explicitly instruct the jury that they could reconsider the question cannot be predicated as error where the defendant did not request any instruction on the subject.

ID.—ADMISSIONS AND CONFESSIONS.—A confession, in criminal law, is an admission or statement, by a person accused of crime, to the effect that he is guilty thereof; and an admission is distinguished from a confession by the fact that the word "admission" relates to matters of fact that do not involve a criminal intent.

ID.—EVIDENCE—BURDEN OF PROOF—JUSTIFICATION FOR HOMICIDE.—A statement of the defendant in a murder case, introduced by the prosecution, in substance, that defendant killed the deceased by one or more blows on his head with a club, coupled with the declaration that deceased, at the time, threatened to kill defendant, that the latter then believed deceased had a pistol in his hands with which

he was about to shoot him, and that with that belief defendant struck the fatal blow, is not a confession, but a declaration of innocence, and it did not throw the burden upon the defendant of proving justification by additional evidence.

ID.—ADMISSION OF EVIDENCE—THREATS—DISCRETION OF COURT.—In a prosecution for murder, where evidence was given that a short time prior to the homicide the defendant and deceased had a physical altercation, during which, or immediately afterward, the defendant made a threat of physical violence against the deceased, a very large discretion is vested in the trial court as to the amount of detail that should be admitted of the previous fight. Enough of the circumstances must always be given to enable the jury to understand the purport of the threat and the purpose of the defendant in making it.

ID.—MURDER OF FIRST DEGREE—PREMEDITATION.—Error in the omission of the words in parentheses in the instructions as to what constitutes murder of the first degree that "It is only necessary that the act of killing be preceded by (and be the result of) a concurrence of the will," is cured by the statement that "the intent to kill must be the result of deliberate premeditation, and must be founded upon a pre-existent reflection and not upon a sudden heat of passion sufficient to preclude the idea of deliberation."

ID.—INSTRUCTIONS—RIGHT OF COURT TO STATE EVIDENCE AND DECLARE LAW.—A court is authorized to state the testimony, if it is uncontradicted, and declare the law on any subject involved in the case, and in a murder case it was not error to instruct the jury, "In this case it is not denied that the defendant struck the blow by which the deceased received the wound in the head, but it is claimed in his behalf that he was justified in doing so, and that the act was committed in defense of his own life, or to prevent the infliction upon him, by the deceased, of great bodily injury," where the evidence was not conflicting upon the subject.

ID.—SELF-DEFENSE—STATEMENT OF EVIDENCE.—The statement in an instruction in such a case that "the defendant had struck the blow by which the deceased received the wound in the head," this fact being admitted, was appropriate as an introduction to an instruction on the law of self-defense immediately following, the question whether or not the blow was given in self-defense being determined by a consideration of the circumstances as they existed at the time the blow was struck; and, although there was some evidence that an automobile was driven over the feet of the deceased after the latter had been admittedly felled by the defendant with a heavy club and left on the ground, the instruction was not injurious to the defendant, where there was no claim that the automobile was purposely driven over the body of the deceased, and hence not a felonious act, and the homicide being a natural and probable result

of the defendant's conduct in leaving the deceased lying helpless and unconscious in a public road, exposed to that danger, defendant's responsibility therefor being criminal or not, according to whether his blow was in self-defense or not.

ID.—INSTRUCTION IN LANGUAGE OF STATUTE.—The legislature has the power to declare what the law shall be on the subject of self-defense, which it has done by section 197 of the Penal Code, and error cannot be predicated upon an instruction which states the law as the legislature has fixed it by statute and which is applicable to the case.

ID.—CONSTRUCTION OF INSTRUCTIONS.—All the instructions relating to the same subject must be considered together in determining the effect of each; and instructions in a murder case, on the subject of self-defense, which, when read together, mean only that if the circumstances as they appeared to the defendant would have induced a reasonable man, so situated, to believe that there was a reasonable mode available to him to escape from danger of death or great bodily harm, the danger thereof would not be then "imminent," and the killing of the deceased at that moment would not be justifiable, are correct.

ID.—FLIGHT—PROPER REFUSAL OF INSTRUCTION.—It is proper to refuse an instruction offered by the defendant in a murder case to the effect that the flight of the accused does not tend to prove deliberation or premeditation on his part in killing the decedent, as it does not correctly state the law, flight being a circumstance to be considered in determining the guilt of the defendant, though not of itself sufficient to establish guilt.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. John Hancock, Judge.

The facts are stated in the opinion of the court.

Walter F. Lynch, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

SHAW, J.—The defendant appealed to the district court of appeal of the third district from a judgment of conviction of the crime of murder of the first degree, the verdict fixing his punishment at imprisonment for life, and from an order denying his motion for a new trial. The justices of that court were unable to agree and the cause was thereupon transferred to this court for decision.

1. The information charges that at the time and place stated, the defendant did "willfully, unlawfully and feloniously, and of his malice aforethought, kill and murder one Albert Duree, a human being, then and there being, contrary, etc." The appellant claims that the information is defective for the reason that it does not set forth the manner and means by which the alleged murder was committed. We had supposed that this objection had been so completely disposed of that it never would be raised again. Ever since the decision of *People* v. *Cronin,* 34 Cal. 200, 208, it has been the established law of this state that an indictment for murder is sufficient in this respect if it charges the crime in the language of the statute. (See, also, *People* v. *Alviso,* 55 Cal. 230; *People* v. *Hyndman,* 99 Cal. 3, [33 Pac. 782]; *People* v. *Witt,* 170 Cal. 107, [148 Pac. 928].) There are many other cases, but it is unnecessary to cite them.

Objection is also made to the form of the information on the ground that it does not state that the crime was committed with deliberation and premeditation. The statement in the information that the defendant did "of his malice aforethought" kill and murder Duree is equivalent to an averment that the act was committed with deliberation and premeditation.

2. Upon the examination of jurors on their *voir dire,* counsel for defendant asked a juror this question: "Could you give the same credit to his testimony [referring to the defendant], were he to go upon the stand, his interest in the result being taken into consideration, that you could give to any other witness?" The objection that this was not a proper question was sustained. This ruling is assigned as error. The defendant had no right to ask this question of the proposed juror. The defendant's interest in the result was only one of the things to be taken into consideration. His demeanor on the stand, his manner of testifying, the character of his testimony, his appearance, and possibly other circumstances were all to be considered in determining the weight of his testimony. The juror could not answer the question properly upon the premises laid in the question. If the defendant wished to ascertain whether or not the juror had any bias against him which would prevent him from giving the defendant a fair trial, he should have gone about it in some other way.

3. A statement concerning the homicide, made by the defendant in the presence of the sheriff, district attorney, and others, soon after his arrest, was taken down by a shorthand reporter and was introduced in evidence at the trial. The defendant, assuming that it was a confession, insists that the evidence was not sufficient to show that the statement was voluntary. The claim is that the evidence shows that he was induced to make the statement by a promise that it would be better for him, and by an intimation that he would not be so severely punished, if he would make a statement of his connection with the homicide and clear it up. It is the duty of the judge of the trial court, when the question is raised whether or not a confession of the defendant was voluntarily made, to hear evidence on the subject, before allowing proof of such confession; and to admit the proof only in the event that he finds it to have been voluntary. He had the right to determine the fact from the evidence and to make a ruling accordingly. His decision of the question, where the evidence is conflicting, is subject to the universal rule applicable to cases on appeal, that the reviewing court will uphold the decision if there is substantial evidence to support it. Here the evidence on the subject was conflicting, and there was substantial evidence to support the conclusion that no inducements were held out to the defendant to elicit the statement that he made, and that it was a voluntary statement. Hence, we cannot say that the ruling was erroneous.

4. The appellant claims that the trial court erred in failing to instruct the jury that they had the right to reconsider the evidence given upon the question whether the statement of the defendant introduced in evidence was voluntary or not. The evidence was not so positive and certain on this question that it should not have been left to the jury to reconsider the same, upon their final consideration of the case. If the defendant has properly preserved the question and the instructions are deficient in that respect, unquestionably there was error in the proceedings below in this particular, if the statement was a confession.

When the court made its ruling admitting the statement in evidence, nothing was said which could have been understood by the jury as a direction that they could not in their

final deliberations reconsider the question. Nor was there anything in the instructions given at the close of the trial which purported to take this question from the jury. They were instructed that they were the judges of the value and effect of evidence and of the credibility of the witnesses. So far as the instructions were concerned, the matter was left open for their consideration, but there was no instruction explicitly directing them that they could reconsider the question. A complete answer to the objection, however, assuming that the statement was a confession, is that the defendant did not request any instruction on the subject. If he was relying on such reconsideration by the jury and desired an explicit direction to them that they had the power to redetermine the same and reject the statement of the defendant as evidence, if from the evidence on the subject they believed that it was not voluntarily made, he should have asked an instruction to that effect. There are numerous decisions on similar questions holding that where such an instruction is not asked the defendant cannot assign the mere failure of the court to give such instruction as error sufficient for reversal. Such decisions have been made with regard to an instruction informing the jury as to the limited purpose for which a particular item of evidence was admitted (*People* v. *Gray,* 66 Cal. 276, [5 Pac. 240] ; *People* v. *Collins,* 48 Cal. 278; *People* v. *Northey,* 77 Cal. 631, [19 Pac. 865, 20 Pac. 129]) ; the failure to instruct the jury that the venue must be proven (*People* v. *Marks,* 72 Cal. 46, [13 Pac. 149] ; the failure to instruct the jury that they could not consider the defendant's failure to testify, in arriving at a verdict (*People* v. *Flynn,* 73 Cal. 513, [15 Pac. 102]) ; a failure to instruct that if the jury found the defendant guilty of murder of the first degree they might relieve him from the death penalty (*People* v. *Olsen,* 80 Cal. 128, [22 Pac. 125]) ; the failure of the court to instruct the jury that they should not consider evidence which had been admitted, but which, on motion of the defendant, had been stricken out (*People* v. *McLean,* 84 Cal. 482, [24 Pac. 32]) ; the failure to give an instruction defining the meaning of the term "reasonable doubt" (*People* v. *Christensen,* 85 Cal. 570, [24 Pac. 888] ; *People* v. *Ahern,* 93 Cal. 518, [29 Pac. 49]) ; the failure to inform the jury that they could find

the defendant guilty of the lesser degree of a crime, when the crime includes two degrees (*People* v. *Hite,* 135 Cal. 76, [67 Pac. 57] ; *People* v. *Arnold,* 116 Cal. 687, [48 Pac. 803] ; *People* v. *Bailey,* 142 Cal. 434, [76 Pac. 49] ), and the failure to define the crime of larceny from the person as distinguished from larceny in general (*People* v. *Appleton,* 120 Cal. 252, [52 Pac. 582] ). We find no ground upon which to distinguish the case at bar from the foregoing decisions, and we think the same rule applies.

A confession, in criminal law, is an admission or statement, by a person accused of a crime, to the effect that he is guilty thereof. "An admission is distinguished from a confession by the fact that the term 'admission,' in criminal matters, relates to matters of fact that do not involve a criminal intent, and a confession is an acknowledgment of guilt." (2 Wharton on Criminal Evidence, 10th ed., sec. 622a.) The author goes on to show that the term "confession" does not include admissions of mere acts of guilty conduct, or of subordinate facts that do not constitute guilt of the offense in question, the reason being that a "confession" is an "acknowledgment, in express terms, by a party in a criminal case, of the truth of the crime charged," and that it is only with respect to confessions, thus defined, that the rule prevails that preliminary proof that they were voluntary must be made before they can be admitted in evidence. (Id., sec. 622b.) This doctrine has often been declared and enforced in this state. (*People* v. *Strong,* 30 Cal. 157; *People* v. *Dennis,* 39 Cal. 637; *People* v. *Le Roy,* 65 Cal. 614, [4 Pac. 649] ; *People* v. *Hickman,* 113 Cal. 86, [45 Pac. 175] ; *People* v. *Ammerman,* 118 Cal. 32, [50 Pac. 15] ; *People* v. *Miller,* 122 Cal. 87, [54 Pac. 523] ; *People* v. *John,* 144 Cal. 286, [77 Pac. 950] ; *People* v. *Weber,* 149 Cal. 339, [86 Pac. 671] ; *People* v. *Wilkins,* 158 Cal. 534, [111 Pac. 612].) The matter is well illustrated by the decision in *State* v. *Knowles,* 48 Iowa, 598. Defendant was charged with forgery of a promissory note. Evidence was given that he had admitted that he wrote the name constituting the signature thereon. The court said: "A confession implies that the matter confessed is a crime, and unless the defendant admitted that he wrote the name of Daniel Slack to the note with a fraudulent intent, his statement is not a confession, because he may have intended by such confession to imply that the act was

done rightfully.'' Also, in *State* v. *Thomas,* 135 Iowa, 735, [109 N. W. 900], where the defendant was charged with the murder of another by means of poison and had stated that he had given too much of the poison by mistake—the poison being also a medicine—the court said: ''The defendant's statement was not that he had wrongfully or unlawfully or with bad motive administered the poison. The statement itself negatives any unlawful intent, and what is said in regard to the act cannot be separated from the accompanying declaration as to intent, so as to make admission of the act itself a confession of the crime.'' (See, also, *State* v. *Abrams,* 131 Iowa, 484, [108 N. W. 1041].) The present case is almost identical with that of *Owens* v. *State,* 120 Ga. 298, [48 S. E. 21]. The defendants were charged with murder, and being confronted with the dead body of deceased, one of them said the deceased was himself to blame, and that ''we had to do it to save ourselves.'' It was held that this was not a confession, the court saying: ''Unless the statement of the defendant is broad enough to comprehend every essential element necessary to make out the case against him, it cannot be said to be an admission of guilt. . . . If the main fact is admitted with a qualifying exclusion of a necessary ingredient of the crime charged, the crime is not confessed. The qualification is a part of the admission, and both must be considered in interpreting the meaning of the statement. It would be manifestly unfair to hold a person legally bound by a statement which admits the commission of an act and in the same breath legally justifies and excuses the same.''

On behalf of the defendant it is claimed that this rule is changed by the provisions of section 1105 of the Penal Code. This section is to the effect that when in a murder case the commission of the homicide by the defendant is proved, the burden of proving circumstances of mitigation, justification, or excuse, devolves upon him, unless the proof of the prosecution tends to show that the defendant was justifiable or excusable or that the crime only amounts to manslaughter. The section does not help the defendant. Here the admission introduced in evidence constituted the proof offered by the prosecution and it included a statement that the killing was done in self-defense, that is, that the defendant was justifiable. It did not throw the burden upon the defendant

of proving the justification by additional evidence, and no inference of guilt could be drawn from the admission as made.

The so-called confession, as set forth in the brief for the defendant, is in substance an admission of the fact that defendant killed Duree by one or more blows on his head with a club, coupled with the declaration that Duree, at the time, threatened to kill defendant, that the defendant then "thought," that is, believed, that Duree had a pistol in his hands with which he was about to shoot defendant, and that with that belief defendant struck the fatal blow. Thus the statement itself would show that the killing was done by defendant in his lawful self-defense. Such an admission, as we have shown, is not a confession of the crime, or an acknowledgment of guilt thereof. It is a declaration of innocence; that no crime was committed; that the killing of Duree was a justifiable homicide and not murder or manslaughter.

5. Evidence was given that a short time prior to the homicide the defendant and Duree had a physical altercation during which, or immediately afterward, the defendant made a threat of physical violence against Duree. The objection was made that the witness who related the circumstance was allowed to describe too much of the details of the fight which preceded the declaration. In matters of this sort a very large discretion is vested in the trial court. Enough of the circumstances must always be given to enable the jury to understand the purport of the threat and the purpose of the defendant in making it. Witnesses cannot always be restrained to the exact proposition sought to be elicited, especially in describing the circumstances under which a threat was made where they consist of a preceding fight. We do not think the court below transgressed its discretion in the present case.

6. Defendant complains of an instruction which he claims violates the rule stated in *People* v. *Maughs*, 149 Cal. 263, [86 Pac. 187]. The part of the instruction containing the objectionable clause is as follows: "To constitute murder of the first degree . . . the killing must be the result of a deliberate premeditation. It must be formed upon a preexisting reflection and not upon a sudden heat of passion sufficient to preclude the idea of deliberation. There need

be no appreciable space of time between the intent and the act of killing, and they must be as instantaneous as the successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of the will, deliberation, and premeditation on the part of the slayer, and if such is the case, the killing is murder of the first degree, no matter how rapidly these acts of the mind may succeed each other, or how quickly they may be followed by the act of killing.'' In *People* v. *Maughs,* referring to the last sentence above quoted, the court said that it should have been amended so as to read: ''It is only necessary that the act of killing be preceded by, *and be the result of* a concurrence of the will,'' etc., and that without the italicized words the instruction was erroneous. This case was considered in *People* v. *Ye Foo,* 4 Cal. App. 739, [89 Pac. 450]. The instruction there considered contained the same statement that is in the instruction here involved, that ''the intent to kill must be the result of deliberate premeditation, and must be founded upon a pre-existent reflection and not upon a sudden heat of passion sufficient to preclude the idea of deliberation.'' It was there held that this cured the supposed error in the omission of the italicized words. This construction of *People* v. *Maughs* received the approval of this court upon a petition for rehearing and it sufficiently disposes of the objection here made.

7. The court gave an instruction as follows: ''In this case it is not denied that the defendant struck the blow by which the deceased received the wound in the head, but it is claimed in his behalf that he was justified in so doing, and that the act was committed in defense of his own life, or to prevent infliction upon him, by the deceased, of great bodily injury.'' The claim that the statement that ''the defendant struck the blow by which the deceased received the wound in the head'' is an instruction on a question of fact upon which the evidence was in conflict is not sustained by the record. The defendant himself testified that he struck Duree a blow on the head with a heavy club, that it felled him to the ground, that he then left him there unconscious, supposing that he was dead. Duree was found shortly afterward lying as he fell, with the pistol near his hand, as the defendant had arranged it to make it appear that Duree had a pistol at the time he was struck. There

was no controversy or dispute at the trial over these facts. The court was authorized to state the testimony, if it was uncontradicted, and declare the law, on any subject involved in the case. (Const., art. VI, sec. 19.) The statement was appropriate as an introduction to the instructions on the law of self-defense which immediately followed it. The argument on the point really is that it was an instruction concerning the immediate cause of the death, or one which might have been so understood by the jury. The persons who discovered the body were passing along the public road in an automobile. The body, when found, lay with the head on the grass at the roadside and the feet extending out into the macadamized portion of the roadway. The driver of the automobile, Albert Due, who lived in that neighborhood, testified that the automobile wheel ran over the shoes or feet of the body, as he passed along, and at the time he at first thought it was only a wet spot in the road. It was in the night-time, cloudy and dark. As he proceeded it occurred to him that it might have been a man lying there, so he turned back and found him, as above stated. There was no other direct evidence on the subject. The evidence which suggested the automobile wheel theory was that of the physician who performed the autopsy on the body. He testified that there were two severe wounds on the head, caused by the impact of some blunt instrument, and that one of them was, in his opinion, broader than would be caused with a club wielded by the defendant, and that it might have been made by the wheel of an automobile. From this it is argued that the larger wound was probably caused by the wheel of the automobile of Due, or some other person, passing over Duree's head as he lay in the public road, that this wound, and not the blow of the defendant, was the immediate cause of the death, and that the court should not have said to the jury that "the defendant had struck the blow by which the deceased received the wound in the head."

This, of course, would have no bearing on the question of the propriety of the statement as an introduction to the subject of the law of self-defense. The question whether or not the blow was given in self-defense must be determined by a consideration of the circumstances as they existed at the time the blow was struck, without regard to any sub-

sequent injury as the cause of death. To the suggestion
that the statement in the instruction may have been under-
stood by the jury to indicate that the court believed that
the blow of the defendant was the cause of the death and not
the injury, if any, from the wheel of the automobile, the
answer is that in that aspect the instruction is not injurious
to the defendant. There is no evidence, and no claim, that
the automobile was purposely driven over the body. If it
was the cause of the death it was not a felonious cause. If
it were, the defendant might not have been responsible for
the homicide. It was the natural and probable result of the
defendant's conduct in leaving Duree lying helpless and
unconscious in a public road, exposed to that danger. This
conduct of the defendant would then be criminal or not,
according to the character of the blow he gave Duree. If
it was done in self-defense, it would be justifiable. If it
was felonious, it would be murder or manslaughter, accord-
ing to the intent and the kind of malice with which it was
inflicted. This, as we have said, would depend upon the cir-
cumstances attending and preceding the blow and not on the
subsequent passing of the automobile over the body. The
case in that event would be similar to many that are given
in the books where the defendant was held responsible for
the natural and probable result of his unlawful acts. Thus
we have the case of the woman who with homicidal intent
left her new-born child in an orchard covered only with
leaves, in which condition it was struck by a kite and died
thereof. (2 Bishop on Criminal Law, sec. 635; Hawkins'
Pleas of the Crown, Curwen's ed., p. 92.) Bishop further
says on this subject: "When an injury was inflicted by a
blow which in competent medical judgment rendered an
operation advisable, preliminarily to which chloroform was
administered, and during its administration the patient died,
and but for it would not have died, it was ruled that the
blow should be deemed the cause of the death within the law
of felonious homicide." (2 Bishop on Criminal Law, sec.
638, subd. 2.) On this subject Mr. Wharton says: "Even
if an injury be given by A which puts B in a position in
which he receives a fatal wound, this is not homicide in A,
unless the wound was the natural and probable result of
the act." (1 Wharton on Criminal Law, sec. 340.) And
further: "He who exposes a helpless person on a cold night

when a storm intervenes cannot set up as a defense that it was a storm that did the hurt.'' (Id., sec. 169.) There are numerous cases to the effect that where one with felonious intent inflicts a wound upon another, not necessarily fatal, but by reason of the poor treatment given in good faith in the attempt to heal it death results, the person who inflicted the wound is responsible for the death, in a criminal prosecution. We cite a few of them: *State* v. *Bantley,* 44 Conn. 537, [26 Am. Rep. 486]; *Commonwealth* v. *Hackett,* 84 Mass. (2 Allen) 136; *Denman* v. *State,* 15 Neb. 138, [17 N. W. 347]; *Kelley* v. *State,* 53 Ind. 311; *People* v. *Lewis,* 124 Cal. 557, [45 L. R. A. 783, 57 Pac. 470].

For these reasons we conclude that the instruction was not erroneous and that the claim that the death might possibly have been caused by the wheel of an automobile was not sufficient to exonerate the defendant from the charge.

8. On the subject of self-defense the court read the whole of section 197 of the Penal Code. Defendant claims that subdivision 3 thereof, when given without qualification, is misleading. It is there said of a person who commits homicide in defense of himself, or of some of the other persons named in that section under the circumstances there stated, that the person committing the homicide, or the person in whose behalf the defense was made, ''if he was the assailant, or engaged in *mortal* combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed.''

It is suggested that if one assaults another with a deadly weapon and in such a manner as to indicate an intent to kill, and the other party resists the assault and uses a deadly weapon in his defense, the two would then be ''engaged in mortal combat,'' and yet the assaulted party would not be required to endeavor to decline further struggle, but could rightfully stand his ground and take his adversary's life if it appeared reasonably necessary to do so in order to save his own. This doctrine has been laid down by this court in many decisions. It is necessary to cite but one, in which the law is summarized. (*People* v. *Hecker,* 109 Cal. 462, [30 L. R. A. 403, 42 Pac. 307].) From this it is argued that the instruction must be condemned as erroneous. But the legislature has the power to declare what the law shall be on this subject. It has done so by this section. If our

decisions have laid down a different rule, it is the decisions which must give way and not the statute. However this may be, it cannot be disputed that error cannot be predicated upon an instruction which states the law as the legislature has fixed it by statute and which is applicable to the case.

In explanation of the peculiar phrase, it may be observed that the word "mortal" was probably a misprint for the word "mutual." It has long been established that one who voluntarily engages in mutual combat with another must have endeavored to withdraw therefrom before he can be justified in killing his adversary to save his own life. This section was enacted in 1872 and it has remained unchanged to this time. Both before and since that time the phrase "mutual combat" has been in general use to designate the branch of the law of self-defense relating to homicides committed in the course of a duel or other fight begun or continued by mutual consent or agreement, express or implied. (3 Russell on Cri. Int., ed. of 1896, p. 57; 1 Michie on Homicide, sec. 118; 1 Bishop's Criminal Law, sec. 870; *People* v. *Sanchez,* 24 Cal. 27; *People* v. *Hecker, supra.*) Mr. Bishop laconically states the rule thus: "Cases of mutual combat are those in which this duty of retreating to the wall oftenest appears. Two men being in the wrong, neither can right himself except by 'retreating to the wall.'" The clause may have been intended to be limited to cases where both parties voluntarily engage in mortal combat, not to cases where one is the assailant and forces the combat on the other. That such a combat was voluntary might be implied from the word "mutual," but it is somewhat difficult to infer the fact from the word "mortal," considered by itself. In connection with the context and in view of the previously well-established rule above mentioned, perhaps the section may be construed to refer solely to voluntary combats. The court below, however, was authorized to give the instruction in the language of the statute. If the defendant desired the jury to have an exposition of its meaning so as to harmonize it with the above-stated rule, he should have asked an instruction on the subject. If it was refused we should then be under the necessity of determining whether or not the proposed exposition was correct, but as

none was proposed, the question is not presented and we express no opinion thereon.

9. The court below gave the following instruction: "In order to justify homicide on the ground of self-defense, or the defense of others, the danger of death, or great bodily harm, must be imminent, present at the time, real or apparent, and so urgent that there is no reasonable mode of escape, or of preventing the death or injury except to take life, or the slayer must have reasonable grounds to believe that such is the case." The defendant complains of the phrase, "and so urgent that there is no reasonable mode of escape." He insists that a rule so arbitrary abridges the right of self-defense by a person unlawfully attacked. The instruction as a whole does not require that the defendant should, at his peril, correctly decide that the danger was so urgent as to afford no reasonable mode of escape other than by killing his adversary. It only requires that he have reasonable grounds to believe that such is the case. The preceding instructions directed the jury that in judging the conduct of the defendant in such circumstances they must consider the circumstances as they appeared to him when he acted on them, and judge him by what a reasonable man, so situated, would do, or might reasonably have done; that the defendant had the right to determine the necessity to kill from the appearances and the actual state of the things apparent to him and could not be held criminally responsible for a mistake made in good faith, if the occasion was such that other judicious men would have been alike mistaken; that "if the appearances were such as to induce in him a reasonable and well-grounded belief that he was actually in danger of losing his life, or suffering great bodily harm, he was justified in defending himself, whether the danger was real or only apparent."

All the instructions relating to the same subject must be considered together in determining the effect of each. The preceding instructions qualify the one complained of, and in connection with them it means only this: That if the circumstances as they appeared to the defendant would have induced a reasonable man, so situated, to believe that there was a reasonable mode available to him to escape from danger of death or great bodily harm, the danger thereof would not be then "imminent" and the killing of Duree at that mo-

ment would not be justifiable. So understood, the instruction is correct.

10. The court refused to give the following instruction asked by the defendant: "The jury are instructed that the flight of the accused does not tend to prove deliberation or premeditation on his part in killing the decedent, Albert Duree." In support of his claim that this instruction is correct, appellant cites *State* v. *Foster*, 130 N. C. 666, [89 Am. St. Rep. 876, 41 S. E. 284], and *Commonwealth* v. *De Fellippis*, 245 Pa. 612, [91 Atl. 1059]. In the Foster case the defendant admitted guilt of murder of the second degree. The court there held that flight did not tend to prove deliberation or premeditation and could not be considered in determining whether or not the defendant was guilty of murder of the first degree. The case was not by any means a well-considered case, and it seems to be contrary to all other authority on the general subject. In the De Fellippis case the court held the contrary and approved an instruction to the effect that flight was a circumstance to be considered, in connection with other evidence, in determining the degree of guilt, on a charge of murder of the first degree. And see *State* v. *Smith*, 106 Ga. 673, [71 Am. St. Rep. 286, 32 S. E. 851], where it is said that flight is a circumstance to be considered in determining the guilt of the defendant of a charge of murder, though not of itself sufficient to establish guilt. In *People* v. *Ngow*, 54 Cal. 151, [35 Am. Rep. 69], the defendant was convicted of murder of the first degree. It was held that the fact that the defendant fled was a circumstance to be considered as tending to show guilt of the crime, though not of itself sufficient to create a presumption of guilt. These authorities show that the instruction did not state the law correctly and that the court below did not err in refusing it.

Other points are urged in the defendant's brief, but they are not of sufficient merit to deserve notice. We find no substantial error in the record.

The judgment and order are affirmed.

Sloss, J., Richards, J., *pro tem.*, Wilbur, J., Melvin, J., Lorigan, J., and Angellotti, C. J., concurred.