Filed 8/17/16  P. v. Martinez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068954 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF34729) |
| ALDO MANUEL MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Ruth Bermudez Montenegro, Judge.  Affirmed.

Cannon & Harris and Donna L. Harris for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Aldo Manuel Martinez guilty of one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).  The trial court sentenced Martinez to a four-year prison term.

Martinez contends that the trial court committed prejudicial error concerning two jury instructions:  (1) the instruction on self-defense; and (2) the instruction on asserting self-defense in instances of mutual combat.  We conclude that Martinez's arguments lack merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 2015, at around 9:00 p.m., in El Centro, Julio Castrejon parked his van next to the sidewalk at his sister-in-law's apartment while his wife went upstairs to pick up their two young children.  Castrejon's daughter came down the stairs by herself, and Castrejon got out of the van to put her in the backseat.  At that point, Castrejon saw Martinez walking on the sidewalk, coming toward the van.  According to Castrejon, as Martinez walked by the van, Martinez stated, "What you looking at, you son of a bitch."  Castrejon replied, "Calm.  Just chilling."  Martinez stated, "You like me or what, you son of a bitch."  Castrejon responded by waving Martinez away and stating, "No.  That's it.  That's enough.  Just go on."  Castrejon and Martinez did not know each other.

Castrejon saw that he was blocking someone from exiting a parking space, so he backed up his van to let the person leave the parking space, and he then moved forward to where he was originally positioned.  As he was repositioning the van, Castrejon saw

2

Martinez in his rearview mirror making insulting and challenging gestures toward him. After Castrejon parked again, Martinez walked back up to Castrejon, who was in the driver's seat of the van, and said, "What do you want? You want problems, you son of a bitch." Castrejon later told police that he thought maybe Martinez misunderstood his backing up of the van as an action of aggression directed toward Martinez, rather than a movement to let someone exit a parking space. According to Castrejon, his driver's side window was slightly open, and Martinez tried to punch him through the window, but Martinez did not make contact with his face.

Around that time, Castrejon's wife, Christina, came down the stairs with the couple's son. She saw Martinez moving toward Castrejon, swearing at him and throwing punches inside the van's window, which she believed made contact with Castrejon approximately two times. Christina heard Martinez say something such as, "I'm going to fuck you up."

Castrejon explained that he was worried about his family's safety, so he took action against Martinez by opening the door to the van and hitting Martinez with the door. Castrejon got out of the van, and both men started throwing punches at each other. Castrejon felt Martinez land a blow on the left side of his neck. Castrejon punched Martinez several times in the face and body. Christina tried to pull the men apart, but they continued fighting. Castrejon felt that he was bleeding and that a piece of skin was hanging near his ear, which made him realize Martinez must have a knife, although he never saw a weapon during the fight. Castrejon became more angry and started kicking at Martinez's leg, trying to break it.

3

At some point, Castrejon tackled Martinez to the ground and the fight continued. Finally, Christina succeeded in convincing Castrejon to end the fight, and Castrejon withdrew. Martinez walked away from the area.

Castrejon was taken by paramedics to the hospital, where it was discovered that he had two cuts on the back of his neck, which required stiches and a transfer to San Diego by helicopter for further evaluation.

Martinez testified at trial and explained that on the night of the assault, he had just been in an argument with his wife and had several alcoholic drinks. He was walking next to the apartment complex, preparing to cross in back of Castrejon's van, when Castrejon unexpectedly backed up, almost hitting Martinez. Martinez and Castrejon had no interaction before the van backed up. Martinez was angry that Castrejon almost hit him, and he therefore shouted rude remarks to Castrejon, swearing at him and telling him to watch where he was going.

According to Martinez, Castrejon then backed up the van so that the two men were face-to-face. Castrejon flung open the door, hitting Martinez. Martinez backed away and started swinging to defend himself. The two men then engaged in a fist-fight, with Martinez hitting Castrejon two or three times in self-defense, and Castrejon hitting Martinez four or five times. Castrejon tackled Martinez to the ground, kicking and hitting him several more times and then putting his hands around Martinez's neck so that he had difficulty breathing. According to Martinez, the fight ended when Castrejon released the grip on his neck, and Martinez walked away. Martinez testified that he did

4

not have a knife during the fight, and he did not hit or punch through the driver's side window.

Martinez was charged with and convicted of one count of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).) The trial court sentenced Martinez to four years in prison.

II.

DISCUSSION

A.    *The Trial Court Did Not Err in the Jury Instruction on Self-defense*

We first consider Martinez's argument that the trial court erred in giving a jury instruction on self-defense that misstated the applicable law.

Based on CALCRIM No. 3470, the trial court gave the following instruction on self-defense:

>"Self-defense is a defense to assault with a deadly weapon. The defendant is not guilty of that crime if he used force against the other person in lawful self-defense. The defendant acted in lawful self-defense if:
>
>"1. The defendant reasonably believed that he was in imminent danger of suffering bodily injury;
>
>"2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;
>
>"AND
>
>"3. The defendant used no more force than was reasonably necessary to defend against that danger.
>
>"Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was imminent danger of bodily injury to himself. Defendant's belief must

5

have been reasonable and he must have acted because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense.

"When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

"The defendant's belief that he was threatened may be reasonable even if he relied on information that was not true. However, the defendant must actually and reasonably have believed that the information was true.

"A defendant is not required to retreat. He or she is entitled to stand his or her ground and defend himself [or herself] and, if reasonably necessary, to pursue an assailant until the danger of death/bodily injury has passed. This is so even if safety could have been achieved by retreating.

"The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty of assault with a deadly weapon."

Focusing solely on the first sentence of the instruction, which states that "[s]elf-defense is a defense to assault with a deadly weapon," Martinez contends that the instruction misstated the law because it erroneously led the jury to believe that a defendant is "entitled to use self[-]defense to defend himself *only if he was assaulted with a deadly weapon*."[1] (Italics added.) As it is undisputedly not a correct statement of the law that a defendant may assert the legal defense of self-defense only in instances where

---

[1] The first sentence of CALCRIM No. 3470 states: "Self-defense is a defense to *<insert list of pertinent crimes charged>*." Here, the first sentence of the instruction as given by the trial court was created by inserting the name of the crime with which Martinez was charged, namely assault with a deadly weapon.

6

the defendant is *himself* assaulted with a deadly weapon (see *People v. Minifie* (1996) 13 Cal.4th 1055, 1064 [threat of imminent bodily injury justifies self-defense]), Martinez contends that the jury was misled by the instruction and the judgment should be reversed. As we will explain, the argument lacks merit.

"A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant." (*People v. Cross* (2008) 45 Cal.4th 58, 67-68 (*Cross*).) " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' " (*People v. Carrington* (2009) 47 Cal.4th 145, 192.) Further, in examining the entire charge we assume that jurors are " ' " ' "intelligent persons and capable of understanding and correlating all jury instructions which are given." ' " ' " (*People v. Smith* (2008) 168 Cal.App.4th 7, 13.)

Here, when the entire instruction on self-defense is considered, there is not a reasonable likelihood that the jury understood it in the way asserted by Martinez. The interpretation advanced by Martinez is possible only by ignoring the second sentence of the instruction. Taken together, the first *and* second sentence state: "Self-defense is a defense to assault with a deadly weapon. The defendant is not guilty of *that crime* if he used force against the other person in lawful self-defense." (Italics added.) The italicized portion of the second sentence, referring to "that crime," unambiguously relates back to the crime of assault with a deadly weapon identified in the first sentence. Therefore, reading the two sentences together, any reasonable person would understand the first

7

sentence to mean that self-defense is a *legal defense* to the *crime of* assault with a deadly weapon.

Subsequent portions of the instruction make clear that the type of threat that gives the defendant the right to use self-defense is not limited to a threat of injury *from a deadly weapon*, but rather any "imminent danger of suffering bodily injury." Specifically, the first element specified in the instruction requires a finding that the defendant "reasonably believed that he was in imminent danger of suffering bodily injury," and the instruction later repeats this requirement by stating that "[t]he defendant must have believed there was imminent danger of bodily injury to himself."

Further, when a defendant claims that an instruction was misleading, we may also "consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.) Here, nothing was said during closing argument, either by the prosecutor or defense counsel, to suggest that Martinez could claim the legal defense of self-defense *only* if Castrejon assaulted him with a deadly weapon. Instead, the portion of the closing arguments discussing self-defense focused on whether Martinez reasonably believed he was in immediate danger of bodily harm.

Accordingly, we conclude there is no reasonable likelihood that the jury understood the first sentence of the instruction to mean that Martinez acted in self-defense *only* if he was responding to an assault with a deadly weapon.

B.      *The Trial Court Did Not Err in the Jury Instruction on Mutual Combat*

Martinez's second argument is that the trial court erred in instructing on mutual combat for two reasons:  (1) the evidence did not support a mutual combat instruction; and (2) the mutual combat instruction misstated the law.

1.      *The Mutual Combat Instruction*

The trial court instructed with CALCRIM No. 3471, titled "Right to Self-defense: Mutual Combat or Initial Aggressor," as follows:

> "A person who engages in mutual combat/ or who starts a fight has a right to self-defense only if:
>
> "1. he actually and in good faith tried to stop fighting;
>
> "AND
>
> "2. he indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting.
>
> "AND
>
> "3. he gave his opponent a chance to stop fighting.
>
> "If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight.
>
> "However, if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting/ or communicate the desire to stop to the opponent, or give the opponent a chance to stop fighting.
>
> "A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose."

9

2. *Martinez's Argument That Insufficient Evidence Supported the Instruction Lacks Merit*

Martinez's first argument is that the instruction should not have been given to the jury because "there was insufficient evidence either that [Martinez] started the fight or that there was any agreement to fight."

Martinez's argument relies on the principle that "[i]t is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) "The trial court has the duty to instruct on general principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.' " (*People v. Saddler* (1979) 24 Cal.3d 671, 681.)

As an initial matter, we note that although Martinez now claims that insufficient evidence supported the instruction, he requested the instruction in the trial court by including it in his packet of requested instructions. Accordingly, the doctrine of invited error applies.

" 'The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest. If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal. . . . [I]t also must be clear that counsel acted for tactical reasons and not out of ignorance or mistake.' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1,

10

49.)  However, "[i]n cases involving an action affirmatively taken by defense counsel," courts "have found a clearly implied tactical purpose to be sufficient to invoke the invited error rule."  (*Ibid*.)  Here, defense counsel clearly took the affirmative action of requesting that the trial court instruct the jury on mutual combat and never withdrew the request.  Accordingly, under the doctrine of invited error, Martinez has forfeited the contention that insufficient evidence supported the giving of a jury instruction on mutual combat.  (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1225 [defendant waived his appellate argument that insufficient evidence supported a jury instruction, as defendant requested the instruction in the trial court].)

Even were we to reach the merits of Martinez's contention, we would reject it because the evidence does support the instruction.

Although Martinez contends that the evidence does not show any agreement to engage in mutual combat, such an agreement may be *implied* from the evidence.  (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1046, 1047 (*Ross*) [mutual combat may be based on an "express or implied" agreement to fight]; CALCRIM No. 3471 [a mutual agreement to fight "may be expressly stated or implied"].)  Here, a reasonable juror could conclude that under a scenario in which (1) Martinez was shouting obscenities at Castrejon and making threatening gestures, and (2) Castrejon got out of his car and confronted Martinez in a violent manner, the two men had entered into an implied agreement to engage in mutual combat to settle their differences.  Specifically, Castrejon testified that when Martinez walked back to confront him, Martinez said, "You want problems, you son of a bitch," and following that statement Castrejon got out of the car.

11

A reasonable juror could conclude that Martinez's specific words, coupled with Castrejon's act of getting out of the car, indicated an implied agreement between the two men that they would fight each other. Indeed, as both Castrejon and Christina testified, the two men started throwing punches *at each other* as soon as they were standing face-to-face.

Sufficient evidence supports the instruction for a second reason. CALCRIM No. 3471, as given by the trial court, applies in two distinct circumstances: (1) where the defendant "engages in mutual combat"; and (2) where a defendant "starts a fight." Here, the evidence supports the instruction because there is sufficient evidence to support a finding that Martinez *started the fight*, regardless of whether the evidence supports a finding of mutual combat. Specifically, Christina testified that she saw Martinez punch through the open half of the driver's side window and make contact with Castrejon at least two times. Martinez's conduct can reasonably be understood as starting a fight as the initial aggressor.

3.      *The Instruction Did Not Misstate the Law*

Finally, Martinez contends that CALCRIM No. 3471 misstates the law regarding self-defense in the context of mutual combat.[2] Although Martinez did not argue in the trial court that CALCRIM No. 3471 reflects an incorrect statement of the law, such an argument is not forfeited on appeal by failing to raise it below. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012 [forfeiture rule "does not apply when . . . the trial court gives an

_____

[2]      The trial court's instruction followed the text of CALCRIM No. 3471, without substantive change.

12

instruction that is an incorrect statement of the law"].) Accordingly, we will consider Martinez's argument. "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law." (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

According to Martinez, CALCRIM No. 3471 misstates the law because, under controlling law, the agreement to engage in mutual combat must be reached *before the initiation of hostilities*. Accordingly, Martinez argues that two flaws are present in CALCRIM No. 3471: (1) instead of stating that the agreement to engage in mutual combat *must precede the initiation of hostilities*, the instruction incorrectly states that such an agreement may also consist of an agreement to *continue* an already-ongoing fight; and (2) instead of stating that the agreement to engage in mutual combat *must precede the initiation of hostilities*, the instruction states that the agreement to engage in mutual combat "must occur 'before the claim to self-defense arose.' "

As authority for his argument, Martinez relies solely on *Ross*. At the time *Ross* was decided, the applicable jury instruction on self-defense in circumstances of mutual combat did not define the term "mutual combat." (*Ross*, *supra*, 155 Cal.App.4th at p. 1043.) *Ross* therefore considered the "meaning of 'mutual combat' as that phrase is used in this state's law of self-defense." (*Ibid.*) CALCRIM No. 3471 specifically cites to *Ross* as support for its definition of mutual combat. (Judicial Council of Cal. Crim. Jury. Instns. (2016) CALCRIM No. 3471, Authority, p. 984.)

Summarizing existing case law at the outset of its analysis, *Ross* explained that "[o]ld but intact case law confirms that as used in this state's law of self-defense, 'mutual

13

combat' means not merely a reciprocal exchange of blows but one *pursuant to mutual intention, consent, or agreement preceding the initiation of hostilities.*" (*Ross*, *supra*, 155 Cal.App.4th at p. 1045.) *Ross* then fleshed out this initial statement by engaging in an extensive review of the case law.

Ross began its review of the case law by observing that in the "lead case" of *People v. Fowler* (1918) 178 Cal. 657, our Supreme Court stated that " 'the phrase "mutual combat" has been in general use to designate the branch of the law of self-defense relating to homicides committed in the course of a duel or other fight begun *or continued* by mutual consent or agreement, express or implied.' " (*Ross*, *supra*, 155 Cal.App.4th at p. 1045, quoting *Fowler*, at p. 671, italics modified from original.) *Ross* then synthesized its review by arriving at the following summary of the law: "We are satisfied that 'mutual combat' consists of fighting by mutual intention or consent, as most clearly reflected in an express or implied agreement to fight. The agreement need not have all the characteristics of a legally binding contract; indeed, it necessarily lacks at least one such characteristic: a lawful object. But there must be evidence from which the jury could reasonably find that both combatants actually consented or intended to fight *before the claimed occasion for self-defense arose.*" (*Id*. at pp. 1046-1047, italics modified from original.)[3]

---

3    Similarly, in a footnote, *Ross* explains that the "common intention or desire [to fight] must precede the first assaultive conduct, *or at least the first conduct sufficient to trigger a right of self-defense in its target*." (*Ross*, *supra*, 155 Cal.App.4th at p. 1045, fn. 14, italics added.)

In arguing that CALCRIM No. 3471 is flawed because *Ross* requires that the agreement to engage in mutual combat must occur *before the initiation of hostilities*, rather than as an agreement to *continue* a fight or as an agreement made *before the right to self-defense arises*, Martinez incorrectly takes a single statement in *Ross* out of context. Although, as we have described, *Ross* initially summarizes the "[o]ld but intact" case law by stating that mutual combat must be "pursuant to mutual intention, consent, or *agreement preceding the initiation of hostilities*" (*Ross*, *supra*, 155 Cal.App.4th at p. 1045, italics modified from original), the subsequent discussion in *Ross*, which we have quoted above, expands on this statement and makes clear both that (1) mutual combat includes an agreement to continue a fight, and (2) there need only be evidence that both combatants consented or intended to fight before the occasion for self-defense arose. (*Id*. at pp. 1045, 1047.)[4] Therefore, we find no merit to Martinez's argument that CALCRIM No. 3471 is inconsistent with the law as stated in *Ross*.

In his reply brief, Martinez appears to make a third challenge to CALCRIM No. 3471, in which he argues that the instruction is misleading because it does not require the jury to determine whether the parties agreed to engage in mutual combat. Martinez

---

[4] Martinez claims that *Ross* cannot have intended to define mutual combat to include an agreement to *continue* a fight because that would create a risk that a defendant's conduct of fighting back in self-defense "may become mutual combat simply because the person exercising his self-defense right 'continues' the fight by fighting back." We disagree. Because both *Ross* and CALCRIM No. 3471 also specify that an agreement to engage in mutual combat can only come about *before* the right to self-defense arises, there is no risk that a defendant will be precluded from claiming self-defense in the event that he continues to fight simply to defend himself from imminent bodily injury.

contends that the instruction improperly permits the jury to simply *assume* there was such an agreement. Specifically, Martinez argues, "CALCRIM No. 3471 . . . did not instruct the jury that it must first find [Martinez] and Castrejon mutually agreed to fight" and did not "make clear that there must be proof of an agreement to fight." Looking to the text of the instruction, we reject the argument.[5]

CALCRIM No. 3471 states that "[a] person who engages in mutual combat" must meet the three requirements set forth in the instruction to claim self-defense. The instruction then gives the jury a definition of mutual combat so that it may determine whether the instruction applies: "A fight is mutual combat when it began or continued by mutual consent or agreement." In light of this language, it is clear that the instruction is calling upon the jury to make a determination of whether there was an agreement to engage in mutual combat, and we perceive no reasonable likelihood that the instruction would be interpreted in the manner identified by Martinez, under which the jury is allowed to *assume* that an agreement existed. (*Cross*, *supra*, 45 Cal.4th at pp. 67-68 [defendant must demonstrate a reasonable likelihood that the jury instruction was understood as he interprets it].)

In sum, we reject Martinez's argument that CALCRIM No. 3471 contains incorrect or misleading statements of law.

---

5       Although we may elect not to address an argument made for the first time in a reply brief (*People v. Zamudio* (2008) 43 Cal.4th 327, 353), in this instance we exercise our discretion to do so.

DISPOSITION

The judgment is affirmed.


                                                                    IRION, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.